Patsy **RICCIARDI**, Plaintiff-Appellant,

v.

James R. **THOMPSON**, etc., et al.,
Defendants-Appellees.

**UNITED STATES** of America,
Petitioner-Appellee,

v.

Patrick **RICCIARDI** et al.,
Respondents-Appellants.

**UNITED STATES** of America,
Petitioner-Appellee,

v.

Sean **O'CONNOR** and Bijou Theatre,
Respondents-Appellants.

Nos. 72-1665, 72-1666 and 72-1677.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 14, 1973.

Decided June 25, 1973.

---

**168**

Patrick A. Tuite, Melvin B. Lewis, Chicago, Ill., for plaintiffs-appellants.

James R. Thompson, U. S. Atty., William T. Huyck, Asst. U. S. Atty., Chicago, Ill., John L. Murphy, Donald Feige, Crim.Div., Dept. of Justice, Washington, D. C., for petitioner-appellee.

Before SWYGERT, Chief Judge, HASTINGS, Senior Circuit Judge, and KILEY, Circuit Judge.

KILEY, Circuit Judge.

These appeals, all of which arise out of the government's seizure of allegedly obscene films for use in impending prosecutions of the theater owners for violation of 18 U.S.C. § 1462, present a common challenge to the procedure used to effect the seizures.[1] Although the factual situations are somewhat different, each appeal asserts that the district court's issuance of a rule to "show cause" why a search warrant should not be issued and an order compelling the appellants to produce in court the offending films for a hearing into the question of probable cause for the issuance of a search warrant, violated the First, Fourth and Fifth Amendments. Because of the common question this court ordered the appeals consolidated. We shall treat them together for convenience in this opinion. We hold that the district court procedure violated appellants' First Amendment rights and that the district court erred in denying their motions for return of the films.

In the *Ricciardi* appeal No. 72–1666 and in the *O'Connor* appeal No. 72–1677 the United States Attorney for the Northern District of Illinois on July 24, 1972 petitioned the district court for an "Order to Show Cause" why a search warrant should not be issued for the seizure of specified films and an order to "appear forthwith before this court and then and there produce said films in their present condition . . ." for exhibition before the court. In *Ricciardi* the order stated that a warrant for the seizure of three films, "Deep Throat," "Vacation in Hot Pants," and "Kiss This Miss" had already been issued. A photocopy of a dated but unsigned warrant was appended to the order, as was an affidavit by an FBI agent which described certain sexually explicit scenes in the films. The agent asserted that the films were obscene and had been unlaw-

---

1. 18 U.S.C. § 1462 makes it a crime to "knowingly use any express company or other common carrier, for carriage in interstate or foreign commerce . . . any obscene, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character. . . ."

fully transported in interstate commerce. The order in *O'Connor* was accompanied by a similar affidavit and ordered the production of a film entitled "Ranch Slaves" and several untitled "featurettes." The appellants in both cases were ordered to appear on the afternoon of service, and did appear with the specified films.

Both Ricciardi and O'Connor (appellants), in response to the show cause order, contended unsuccessfully that the films were protected material under the First Amendment and that the order requiring production violated appellants' privilege against self-incrimination. After denying these motions, the court ordered an "adversary hearing" with the government to present evidence on the question of probable cause. Hearings were held on July 25, 28 and 31, 1972. The only evidence provided was the agent's affidavit attached to the show cause order. Based upon the affidavit, the court found that the government had established a prima facie case and shifted the burden to the appellants.[2] The agent did not testify, and the appellants were given no opportunity to cross-examine him on the affidavit until and unless they first consented to have films viewed by the court. Appellants objected to these procedures but ultimately agreed to have the court view the films. The appellants were then permitted to call the agent and cross-examine him.

After the agent testified, the court continued the cause, but ordered the appellants to "retain" possession of the films until further order of the court. No restriction was placed upon the appellants' right to exhibit the films. On July 31, 1972 the court held that probable cause existed and ordered the warrant issued and the films seized. Federal agents immediately seized the films.[3] The next day appellants moved, pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure, for the return of the films. The court denied the motion. These appeals followed. The films are still in the possession of the government.

Appellants contend, among other things, that they were denied due process because the procedures used by the trial judge lacked sufficient guidelines and rules, denied the protections of the First Amendment by having the burden of proof improperly shifted to them, denied the protections of the Fourth Amendment by the issuance of a warrant on evidence alleged to be insufficient to support a probable cause finding, and denied a fair trial by the improper selection of the trial judge. Because we find that the procedures employed in effecting the seizure and retention of material— which was arguably protected by the First Amendment—were constitutionally infirm, we do not reach all of appellants' contentions.

2. The affidavit stated that the agent had seen the films in question at the Bijou Theatre and that he believed that they were obscene. To support this conclusion the agent described several sexually explicit scenes involving homosexual activity. In addition, the affidavit stated that the agent had learned that the film "Ranch Slaves" had been shipped by Novo Air-Freight from Hollywood, California to the Bijou Theatre in Chicago *shortly before the agent viewed it.* However, following the hearing, but prior to the issuance of the warrant, the government amended the affidavit by deleting all reference to the title of the particular film shipped by Novo Air-Freight.

3. Pursuant to that warrant, agents searched the Admiral Theatre but did not find the films. Upon return of the unexecuted warrant the government petitioned the court for an order to show cause why Ricciardi should not be held in contempt. Following a hearing, Ricciardi was found in contempt and incarcerated until the films were produced. Shortly thereafter the films were delivered to the prosecutor and Ricciardi *was released. Ricciardi immediately filed* an action for the return of the films, and their suppression as evidence. The court denied and dismissed this action, holding that the finding made at the time the search warrant issued was *res judicata.* Ricciardi appealed in No. 72–1665 from the dismissal.

Apparently the government was attempting to invoke the New York statutory procedure sustained in Kingsley Books, Inc. v. Brown, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957), when it initiated the show cause proceeding now before us. The State of New York there sought, under the New York obscenity statute, an injunction to restrain the sale of Kingsley's "booklets." Attached to the complaint was a sample of the booklets alleged to be obscene. Based upon the complaint and the sample material the court issued a rule requiring Kingsley to show cause why an injunction should not be issued. Kingsley's prompt response raised the issue of obscenity, and the court, within the time limited by the statute, made a final determination that the books were obscene. That procedure, however, is unworkable in a situation where, as here, the alleged offending material cannot be procured by the government and made available to the court without a seizure.

The district court was misled—by the unlawful show cause procedure initiated by the government—into an anomalous proceeding which denied appellants First Amendment rights.

Appellant Ricciardi properly characterizes the court's procedure, "the proceedings began with an attempt to seize the films in order to determine whether they might be seized." The trial court, under the misapprehension—caused by the government's unconstitutional procedure—that a prior adversary hearing was a constitutional prerequisite to the issuance of the warrant, attempted to devise an appropriate legal method by which to compel the production of the films for the probable cause determination and at the same time avoid seizure without the obscenity hearing prior to the issuance of the warrant. There was no necessity, however, for the court to avoid the customary *ex parte* probable cause procedure simply because motion picture films were subject of the proposed search and seizure.

The search and seizure sought by the government was for the purpose of prosecution under § 1462. That statute is not an obscenity statute in the sense that various state laws are. There is no federal obscenity statute in that sense. The federal element in § 1462 is the interstate transportation of obscene films. In a prosecution under § 1462, proof of obscenity, absent proof of the unlawful interstate transportation, does not alone support a conviction. The question of obscenity may not even be reached in unsuccessful prosecutions under § 1462.

We recognize, however, the difficulty facing district courts in disposing of applications for warrants to search for and seize motion picture films. There is the need of avoiding the Scylla of interfering with the prosecutorial process necessary in enforcement of § 1462; there is the need of avoiding the Charybdis on the other side of undue inhibition of film owners in the exercise of their First Amendment rights. We condemn the show cause procedure used in the cases before us.

In future cases, the government shall have 24 hours after seizure of the films in which to copy the alleged offending films and in which to return them to the persons from whom they were seized. If the government needs additional time for copying the films, it must, within the 24 hour period make application to the district court for an extension of time, with notice to the owners. Because of the important First Amendment interests involved, no such extension shall be granted except to a specified hour, after an immediate hearing with respect to a good faith showing which justifies the extension. If the court finds the additional time requested by the government to be unreasonable in light of the restraint being imposed upon the owner's First Amendment right to display the film, it shall order the film returned forthwith. If the extension is granted, the government shall return the property to the persons entitled thereto at the close of the extended period without further delay.

The judgments denying plaintiffs' motion under Rule 41(e) are reversed

and the causes are remanded with directions to grant the motions and order the films returned to plaintiffs forthwith.

Reversed and remanded with directions.