**Fred CHERRY, Plaintiff,**

v.

**The SECRETARY OF the TREASURY OF the UNITED STATES, Defendant.**

**No. 76 Civ. 1561 (RLC).**

United States District Court,
S. D. New York.

Nov. 9, 1978.

Fred Cherry, pro se.

Frederick P. Schaffer, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty., for S. D. N. Y., New York City), for defendant.

Before MULLIGAN, Circuit Judge, and CARTER and CONNER, District Judges.

OPINION

CARTER, District Judge.

Plaintiff here challenges the constitutionality of 19 U.S.C. § 1305, both facially and as applied, and seeks to enjoin its enforcement. He claims that this statute, which prohibits the importation of obscene articles into the United States and provides for seizure and forfeiture of such articles, violates the First and Fifth Amendments in that (1) it fails to provide for a change in venue; (2) it allows the government rather than the claimant to retain possession of the seized articles during the pendency of the forfeiture proceedings; and (3) it does not permit the examination of such articles except in the jurisdiction where they are seized.

*Background*

The plaintiff, Fred Cherry, has been a party to two other actions regarding similar issues. In *United States v. Various Articles of Obscene Merchandise, Schedule 979*, 73 Civ. 4146, a three-judge court in this district held that Cherry lacked standing to raise the same constitutional objections that he now advances. In the previous action customs officials had confiscated allegedly obscene material when it was on route to Cherry's Brooklyn address, and the three-judge court found that the absence of a provision permitting a change of venue did not injure Cherry since it merely required him to cross the Brooklyn Bridge from the Eastern District of New York to the Southern District of New York.

The second case involving Cherry was the forfeiture action which generated the factual basis for the present suit. In *United States v. Various Articles of Obscene Mer-*

*chandise, Schedule 1350*, 76 Civ. 791, Cherry contested the seizure of articles addressed to his winter residence in Puerto Rico. Judge Cooper of this court presided over a jury trial at which the materials were found to be obscene. Although Cherry raised his constitutional arguments as affirmative defenses in his answer in the forfeiture action, he did not pursue these contentions and the court made no ruling on them.[1] The forfeiture case was not appealed.

Plaintiff then brought the instant action, seeking to have the statute in question declared unconstitutional. He attempted to overcome his earlier difficulty with standing by pointing to the more recent case where his inability to obtain a change in venue forced him to travel to New York to challenge the confiscation of materials addressed to his home in Puerto Rico. In August of 1976, plaintiff moved pursuant to 28 U.S.C. § 2282 to have a three-judge court hear his constitutional claim.[2] This three-judge court was then convened,[3] but shortly thereafter Judge Frankel rendered a decision in *United States v. Various Articles of Obscene Merchandise, Schedule No. 1303*, 433 F.Supp. 1132 (S.D.N.Y.1976), in which he held that the venue provisions of 19 U.S.C. § 1305 violate the First Amendment. Because of the similarity between that case and Mr. Cherry's claims, the instant case was placed on suspense pending the disposition of the government's appeal of Judge Frankel's decision.

All appeals of Judge Frankel's ruling have now been exhausted, and the instant case may now be removed from the suspense calendar. The parties have agreed that their pleadings and communications with respect to the convening of a three-judge court may be taken as their submissions regarding a dismissal motion by the government. For the reasons set forth be-

---

1. Since the constitutional issues were never litigated nor ruled upon in the forfeiture proceedings, the doctrine of collateral estoppel does not apply. *Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 593, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974).

2. Although three-judge courts were abolished for most purposes in August, 1976, Pub.L. 94–381, §§ 1, 2, this change was not made retroactive to cases already filed.

3. Chief Judge Kaufman signed an order on August 13, 1976, designating the members of this three-judge court.

low, defendant's motion to dismiss the complaint is granted.

*Venue Provisions*

Plaintiff's first constitutional argument here is identical with that of the claimant in *United States v. Various Articles of Obscene Merchandise, Schedule No. 1303*, 433 F.Supp. 1132 (S.D.N.Y.1976) (Frankel, J.).[4] In that case, Judge Frankel found that the claimant's First Amendment rights were infringed because the fixed venue provisions made the preservation of these rights costly and troublesome. *Id.* at 1139. Judge Frankel suggested that the constitutionality of the statute as a whole could be preserved if the government notified potential claimants that the forfeiture could be challenged in the district of their residence. *Id.* at 1139.

Rather than accept this suggestion the government appealed, and the trial court was reversed. *United States v. Various Articles of Obscene Merchandise, Schedule No. 1303*, 562 F.2d 185 (2d Cir. 1977). In its opinion the Second Circuit expressed considerable skepticism regarding the wisdom of devoting scarce governmental resources to the interception of supposedly obscene materials mailed from abroad. *Id.* at 188–89. The court, nevertheless, found that it was Congress' intent to confine venue in such cases to the port of entry where the seizure is made, *id.* at 188–89, and that the "plenary power" of Congress with regard to the importation of obscene materials immunizes this provision from constitutional challenge. *Id.* at 189. The Supreme Court denied certiorari in that case, *sub nom.*

*Long v. United States*, 436 U.S. 931, 98 S.Ct. 2831, 56 L.Ed.2d 776 (1978), and the opinion of the Second Circuit is therefore binding upon this court.

The disposition by the Second Circuit appears to foreclose two aspects of constitutional arguments advanced by Cherry. Since 19 U.S.C. § 1305 has been held constitutional, Cherry has no general First Amendment claim. Furthermore, to the extent that he contends that the venue provision impairs his ability to prepare for trial by preventing examination of the seized materials outside of New York, the Second Circuit decision upholding fully the fixed venue provision disposes of this claim.[5]

In recent correspondence with this court, plaintiff has asserted that his case should remain on the suspense calendar despite final disposition of the matter that triggered the assignment of this case to limbo. Cherry argues that a recent decision of this court, *United States v. Various Articles of Obscene Merchandise*, No. 78 Civ. 2475, July 28, 1978 (Leval, J.), alters the substantive standard for obscenity. That case, however, has no effect on plaintiff's present cause of action. Here, Cherry has disavowed any challenge to the substance of the obscenity laws[6] and has focused entirely on what he believes to be constitutionally defective procedures in 19 U.S.C. § 1305. Moreover, as to the question of whether the particular items that plaintiff imported were obscene, the determination of the jury in the forfeiture proceedings, No. 76 Civ. 791, is *res judicata.* Therefore, plaintiff's constitutional attack on the venue provision is without merit.

---

4. Here, as in the case before Judge Frankel, the plaintiff merits recognition as one of the few addressees of confiscated materials who has devoted time and energy to resisting forfeiture.

5. In a letter to this court dated August 25, 1976, the government asserts that plaintiff's claim that his ability to prepare for trial is impaired is barred by *res judicata.* This contention is based on the finding in *United States v. Various Articles of Obscene Merchandise, Schedule No. 979*, 73 Civ. 4146 (Memorandum, June 27, 1974 at 6) (three-judge court), that Cherry had been given an adequate opportunity to examine the articles in question in *that* case. However, the

instant case involves a different set of operative facts, so the doctrine of *res judicata* cannot apply.

6. Plaintiff states on page 4 of his Motion to Convene a Three-Judge Court:

I do not question the right of the government to censor so-called "obscenity," or to seize this material in New York in the first place. I am merely questioning the *procedural* aspects of this particular censorship scheme (i. e., the fact that no change of venue is permitted).

*Possession During Pendency of Litigation*

Plaintiff's second argument is grounded in the Fifth Amendment. He contends that retention of the seized articles by the government during the pendency of the forfeiture proceedings constitutes a deprivation of liberty or property without due process. In the abstract, this argument is not without merit where the articles themselves are not hazardous instrumentalities and where the seized materials are easily duplicated so that there is little danger that destruction of the originals would prevent the government from prosecuting its case. However, the decisions of the Supreme Court present the plaintiff with an insurmountable barrier.

In *United States v. Thirty-Seven (37) Photographs*, 402 U.S. 363, 376, 91 S.Ct. 1400, 1408, 28 L.Ed.2d 822 (1971), a plurality of the Supreme Court held that:

> "[O]bscene materials may be removed from the channels of commerce when discovered in the luggage of a returning foreign traveler even though intended solely for his private use."

Two years later, a majority of the Court endorsed this position in *United States v. 12 200-Ft. Reels of Super 8 MM Film*, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973). By implication, materials so confiscated may be held by the government pending a determination of whether they are subject to forfeiture, as long as the government complies with the constitutional requirements for swift disposition of the case as required by 19 U.S.C. § 1305. *United States v. Thirty-Seven (37) Photographs, supra*, 402 U.S. at 373–74, 91 S.Ct. 1400. In *Heller v. New York*, 413 U.S. 483, 489, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973), the Court reaffirmed this position when it noted that *Thirty-Seven Photographs* had not required any adversary hearing prior to *initial* seizure.[7]

It is clear, then, that the government may retain possession of confiscated materials seized by customs officials, as long as an adversary proceeding to determine whether the articles are obscene is held promptly. Plaintiff's argument that his case is distinguishable from prior Supreme Court decisions because he has had no opportunity whatever to peruse the imported articles is unpersuasive. Neither *United States v. Thirty-Seven Photographs, supra*, nor *United States v. 12 200-Ft. Reels of Super 8 MM. Film, supra*, found any significance in the fact that the claimants were travelers returning with materials that they might already have examined closely. Arguments to that effect in the government's brief in the latter case[8] were not adopted by the Court and have no precedential value.

Furthermore, the cases cited by the plaintiff are inapposite. In *Perial v. Morse*, 482 F.2d 515, 525 (2d Cir. 1973), and *Ricciardi v. Thompson*, 480 F.2d 167 (7th Cir. 1973), courts approved provisions designed to limit the degree to which a pre-hearing seizure would serve as a restraint on free speech. Both cases, however, involved the seizure of films already being shown commercially within the United States. In each case the court suggested that only a single print of the film was needed for evidentiary purposes, and that the film could be copied so that it could be shown during the pendency of the obscenity determination. *Perial v. Morse, supra*, at 525; *Ricciardi v. Thompson, supra*, at 170. Mr. Cherry's case calls for a different balancing of interests. Plaintiff here has disavowed any intent to circulate the materials that he has imported, so the First Amendment rights of audiences other than the claimant are not implicated. Nor is there any allegation that Cherry suffers financial hardship akin to that of the theater owners whose livelihood

---

7. Although in *Heller* the seizure was preceded by the issuance of a warrant by a magistrate who had viewed the article in question, the plenary power of customs officials to seize potentially obscene materials entering the country renders any possible distinction from the present case unimportant. *See United States v. 12 200-Ft. Reels of Super 8 MM. Film*, 413 U.S. 123, 125, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973).

8. Brief of the United States, p. 15, quoted in Plaintiff's Motion to Convene a Three-Judge Court, p. 11.

depends upon their showing erotic films for profit. The primary interest asserted by Cherry is the right to personal use of the articles during the interim period.[9] Where the plaintiff will receive the materials after a prompt hea.ing if they are found not to be obscene, his interest in immediate access for recreational purposes is *de minimis*. The Supreme Court has determined that, in contrast to justice, pleasure delayed need not be pleasure denied.

The Supreme Court has thus found no constitutional defect in the temporary retention of allegedly obscene materials pending a court determination. This, together with the Second Circuit's holding that the fixed venue provision of the statute is permissible, vitiates Cherry's argument that his rights are violated when, during the pendency of the forfeiture proceedings, he is prevented from enjoying the materials anywhere except in the United States Attorney's office in the district where the materials were seized.

None of plaintiff's claims, then, present a cause of action upon which relief can be granted. Accordingly, defendant's motion to dismiss the complaint is granted.

IT IS SO ORDERED.

---

9. Letter of plaintiff addressed to the court, dated September 1, 1976.