UNITED STATES of America, Plaintiff,

v.

Judith Kay LEVINSON, Defendant.

No. CR–S–91–040–PMP (LRL).

United States District Court,
D. Nevada.

March 23, 1992.

Carl Alexandre, William Wagner and Janis Kockritz, U.S. Dept. of Justice, Washington, D.C., for plaintiff.

John H. Weston, and Clyde F. DeWitt, Beverly Hills, Cal., for defendant.

## ORDER

PRO, District Judge.

On June 21, 1991, Defendants filed a Motion to Suppress Evidence and for the Return of Property (# 40). On January 14, 1992, the Honorable Lawrence R. Leavitt entered a Report and Recommendation (# 85) recommending the granting of Defendants' above-referenced Motion. The Government filed Objections thereto (# 89) on March 5, 1992, in accordance with Local Rule 510–2 of the Rules of Practice of the

United States District Court for the District of Nevada, to which Defendants Responded (# 94) on March 19, 1992. On March 20, 1992, the Clerk of Court referred Defendants' Motion to the undersigned for consideration.

The Court has conducted a *de novo* review of the record in this case in accordance with 28 U.S.C. § 636(b)(1)(B) and (C) and Local Rule 510–2 and finds that the evidence supports the factual findings set forth in Judge Leavitt's Report and Recommendation entered January 14, 1992.

IT IS THEREFORE ORDERED that the Report and Recommendation of Magistrate Judge Leavitt entered January 14, 1992 (# 85) is affirmed and Defendants' Motion to Suppress Evidence and for the Return of Property (# 40) is granted.

## REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

(Motion to Suppress—# 40)

LEAVITT, United States Magistrate Judge.

The defendants are presently awaiting trial on charges of conspiring to use and knowingly using an express company or other common carrier to transport obscene videotapes in interstate commerce, in violation of 18 U.S.C. §§ 371 and 1462, respectively. The matter presently before the Court is the defendants' Motion to Suppress Evidence and for the Return of Property (# 40, filed June 21, 1991). At issue is a warrant issued by a U.S. Magistrate Judge in the Central District of California authorizing agents of the FBI to search the defendants' home in Agoura Hills, California. Based on a showing that the defendants were violating federal obscenity laws, the warrant called for the seizure of copies of certain allegedly obscene video tapes which had been shipped from Los Angeles to an undercover FBI agent in Las Vegas, and a variety of records relating to defendant Equs Distributing, Inc.'s acquisi-tion, marketing and distribution of obscene video tapes.

The defendants attack the showing of probable cause set forth in the affidavit supporting the warrant. They acknowledge that the affidavit's description of the sexual content of the video tapes in question is sufficiently particularized. They contend, however, that because the FBI at all times intended to bring this prosecution in Las Vegas, which was the market to which the tapes were shipped, the magistrate who issued the warrant in Los Angeles was required to determine probable obscenity in light of the community standards of Las Vegas. They argue that the warrant must fall because the affidavit, whose account of unlawful activity is predicated upon a showing of the obscenity of the video tapes, failed to give the Los Angeles magistrate an independent and objective basis for determining the obscenity standards of Las Vegas.

In its Response (# 51, filed July 5, 1991) the government contends that because this prosecution could have been brought in either Los Angeles (the shipping district) or Las Vegas (the receiving district), the magistrate need only have applied Los Angeles community standards; he was not required to determine whether the tapes would probably be adjudged obscene in Las Vegas. The government further contends that even if the issuing magistrate had been required to apply Las Vegas community standards, the affidavit in fact supplied a sufficient basis for doing so.

The affidavit was signed by an agent of the FBI's Los Angeles Division. Based on information supplied by a detective with the Los Angeles Police Department and by Special Agent Roger T. Young of the FBI's Las Vegas field office—which information is not at issue for the purposes of this motion—the affiant concludes that there is probable cause to believe that the corporate defendant, Equs Distributing, is involved in the business of distributing certain video tapes in interstate commerce,[1]

---

**1.** In particular, the affidavit details the transactions in which Agent Young, acting in an undercover capacity in Las Vegas, ordered and re-ceived by interstate shipment seven identified video tapes from Equs Distributing in Southern California.

and that the two individual defendants operate Equs Distributing from their residence in Agoura, California.

In support of the conclusion that the video tapes contain obscene material, the affiant attached a set of Agent Young's FBI FD–302 reports, in which the contents of the video tapes in question are described in considerable detail. It is clear from these descriptions that the seven video tapes which form the basis of the investigation contain depictions of sexually explicit conduct between and among male and female adults. In addition to the description of the contents of the video tapes, the following passage at page 11 of the affidavit was offered in support of the affiant's conclusion that the tapes are probably obscene:

Special Agent Roger T. Young advised your affiant that he personally reviewed the within named video cassettes or reports made by other Special Agents who have reviewed the within named videos, and that in his opinion these video cassettes violate the Federal Obscenity Statutes. This opinion is based on prior investigations, numerous interviews, appearances before civic groups in the Las Vegas, Nevada area, and from Grand Jury appearances where similar videos and films showing sexually explicit acts were found to be in violation of Federal Obscenity Laws.

As for Agent Young's expertise in the area of pornography, the affidavit states at page 6:

Roger T. Young is a Special Agent (SA) with the Federal Bureau of Investigation (FBI), currently assigned to the Las Vegas, Nevada field office and has been so employed for approximately fourteen and a half (14½) years. For the past twelve and a half (12½) year, SA Young has been conducting investigations concerning violations of federal laws involving pornography. SA Young has been certified by the FBI as a police instructor in this area and has provided training to numerous law enforcement officers at the federal, state, and local levels at various locations in the western

United States. More recently, over the past 7 months, SA Young has been conducting investigations regarding the interstate transportation of pornography from Southern California to Las Vegas, Nevada.

Other than noting that the seven videos were held out by Equs as "sexually explicit," "adult," or "X" rated, the affidavit contains no information other than that which is set forth above upon which the issuing magistrate could have concluded that the video tapes are probably obscene by Las Vegas standards.

## DISCUSSION

In evaluating the sufficiency of an affidavit in support of a search warrant, a neutral and detached magistrate must be given some factual basis, apart from the mere conclusions of the affiant, upon which to make a probable cause determination. *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). Where the materials sought to be seized may implicate First Amendment interests, the requirements of the Fourth Amendment must be applied with "scrupulous exactitude." *Stanford v. Texas,* 379 U.S. 476, 485, 85 S.Ct. 506, 511, 13 L.Ed.2d 431 (1965).

In an obscenity case, materials such as books or films which are presumptively protected by the First Amendment may not be seized unless a neutral magistrate has first made a probable cause determination of obscenity based upon a careful scrutiny of the materials. *Lee Art Theatre, Inc. v. Virginia,* 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968). This careful scrutiny requires the magistrate to "focus searchingly on the question of obscenity." *Marcus v. Search Warrants,* 367 U.S. 717, 732, 81 S.Ct. 1708, 1716, 6 L.Ed.2d 1127 (1961).

In making a determination regarding obscenity, the material must be considered as a whole. *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). *Miller* requires the application of a three-part test:

(a) whether the average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. The magistrate issuing a warrant to seize such protected material, accordingly, must have probable cause to believe that all three parts of the test will be satisfied by the material to be seized.

*United States v. Tupler*, 564 F.2d 1294, 1297 (9th Cir.1977). Hence, the fact that a video tape contains depictions of sexually explicit conduct cannot, by itself, justify a finding that it is probably obscene. *United States v. Pryba*, 674 F.Supp. 1518 (E.D.Va. 1987). The issuing magistrate must also determine, among other things, whether the material is "patently offensive to the average person in the community." *United States v. Various Articles of Obscene Merchandise*, 709 F.2d 132, 135 (2d Cir. 1983). The determination of this factual issue "involves complicated knowledge and information far beyond that which is evident from the face of a photograph alone. An affidavit that merely alleges that certain photographs are 'obscene,' therefore, makes a complicated and subjective conclusion unsuitable for an independent judicial evaluation and therefore inadequate for the issuance of a warrant." *United States v. Smith*, 795 F.2d 841, 848, n. 7 (9th Cir. 1986).

■ Here, apart from Agent Young's opinion that the video tapes in question "violate the Federal Obscenity Statutes," the affidavit is devoid of any empirical basis upon which a Los Angeles magistrate could rationally conclude that the tapes are "patently offensive" under the community standards of Las Vegas. In fact, on its face Agent Young's opinion is not even limited to the relevant standards of the Las Vegas community; literally, his opinion is simply that the tapes violate the "Federal Obscenity Statutes." Such a statement scarcely provided the Los Angeles magis-

trate the factual guidance he needed in order independently to determine the community standards in Las Vegas.

Even if Agent Young's opinion could be construed as indirectly reflecting his perception of what the average Las Vegan, applying contemporary community standards, would find obscene, the fact remains that the Los Angeles magistrate was provided with no basis upon which to exercise his independent judgment. Agent Young's opinion does nothing more than draw the very conclusion which the magistrate is required to draw.

There are occasions on which a magistrate issuing a search warrant may be justified in relying on certain types of opinion offered by law enforcement officers. In the context of a drug trafficking case, for example, the judge may rely on the opinion of an experienced narcotics investigator that a high level drug trafficker is likely to maintain business records at his or her home for an extended period of time. In the absence of direct evidence, the issuing magistrate may factor such an opinion into the showing that there is probable cause to believe such records are in the trafficker's home, and that such cause is not stale. *See United States v. Foster*, 711 F.2d 871, 878 (9th Cir.1983). Such an opinion, however, is very different from the type of opinion which Agent Young offers in this case. In the drug trafficking context, the agent's opinion is in reality an empirical observation about the typical behavior of a limited class of persons whose conduct is closely observed by the law enforcement community. It is confined to the manner in which a drug dealer is likely to maintain drug-related records. By contrast, Agent Young's opinion concerns such factors as the tastes, interests, and moral, sexual and religious beliefs of the average person in a diverse community of approximately 800,000 people. These factors are far more difficult to quantify and predict than are the record-keeping tendencies of drug dealers. With all due respect to Agent Young, whom the Court knows to be a capable and experienced pornography investigator, his opinion about community standards is hardly as

reliable as that of the narcotics investigator mentioned above. Without providing a factual basis for it, Agent Young's bare opinion does not enable a magistrate sitting in a foreign district to come to an independent conclusion about the relevant community standards in Las Vegas.[2]

Indeed, the task of determining community standards would be difficult enough for a magistrate who has lived in Las Vegas for many years. Without factual guidance, such a task is impossible for a magistrate who sits in a foreign district. The affidavit presented to the magistrate in Los Angeles provided no such factual guidance. It provided only Agent Young's opinion that the materials violate the federal obscenity statutes. In passing on the merits of a search warrant application, the magistrate cannot surrender his constitutional duty of neutrality and detachment, no matter how capable or experienced the law enforcement applicant may be.

The government argues that the issuing magistrate was not required to apply the community standards of Las Vegas because this case could have been brought in Los Angeles. Therefore, according to the government, the magistrate was required only to apply the community standards of Los Angeles. This argument strikes the Court as being somewhat disingenuous. The government admitted at oral argument that at the time the search warrant was sought, the prosecutive decision had already been made to institute criminal proceedings in Las Vegas, not Los Angeles. Hence, the government is defending this warrant on the ground that technically this prosecution could have been brought in Los Angeles, and at the same time is admitting that it had no intention of doing so. Such craftiness finds no judicial quarter here,

particularly in view of the government attorney's further acknowledgement at oral argument that although he is aware of no caselaw directly on point, he "suspects" that had the magistrate known that the case was to be brought in Las Vegas, the magistrate would probably have been required to apply the standards of the Las Vegas community.

▪ Obscenity is a community-oriented concept. *Miller v. California, supra.* Which community's standards should be applied in a given case? The community where the prosecution is initiated is the community whose standards the government seeks to defend, and it is also the community where the accused's First Amendment rights are placed in issue. The jury in such a community is properly called upon to determine and apply the standards of their own community. *United States v. Mohney,* 476 F.Supp. 421 (D.Hawaii, 1979). A juror must be allowed "to draw on knowledge of the community or vicinage from which he comes in deciding what conclusion 'the average person, applying contemporary community standards' would reach in a given case." *Hamling v. United States,* 418 U.S. 87, 105, 94 S.Ct. 2887, 2901, 41 L.Ed.2d 590 (1974). The community where prosecution occurs is therefore the only relevant community whose obscenity standards should be applied. It would be nonsensical to permit the government to arbitrarily require that the jury's deliberations be governed by the standards of another community.

Likewise, where a magistrate is asked to issue a search warrant, he is ordinarily required to determine and apply the obscenity standards of his own community.

**2.** As noted above, the affidavit states that Agent Young's opinion is "based on prior investigations, numerous interviews, appearances before civic groups in the Las Vegas, Nevada area, and from Grand Jury appearances where similar videos and films showing sexually explicit acts were found to be in violation of Federal Obscenity Laws." The affidavit does not, however, reveal what it was about the prior investigations or numerous interviews which enabled the agent to form an opinion about the contemporary community standards of Las Vegas. Nor is

the reader given a clue as to how appearances before civic groups led to a conclusion concerning the area's community standards. Nor can a grand jury indictment serve as a basis for a finding of probable obscenity to support a search warrant. *United States v. Smith,* 509 F.Supp. 127 (S.D.Fla.1981). In any event, the cursory recitation of Agent Young's experience may be relevant to his *qualifications* as an expert in the field of pornography investigations, but shed no light on the *factual basis* of his opinion as to the seven video tapes in question.

That, after all, is the community where the allegedly obscene materials are located, and that is where the putative defendant's First Amendment rights are placed in issue. It is therefore the only relevant community whose obscenity standards should govern the magistrate's determination.

■ This case, however, presents an interesting twist. Here is a case in which allegedly obscene materials are sought to be seized in one district with the express intent that they be made the basis of an obscenity prosecution in another district. Whose obscenity standards should apply, the district of seizure or the district of prosecution? The parties have pointed to no authority directly on point. In this Court's view, the answer is found by determining whose societal interest in eliminating obscenity the government is seeking to protect, and where the defendant's First Amendment rights are most significantly at issue? In this case the answer is clear: it is the district of prosecution, not of seizure. Las Vegas is the community into which the allegedly obscene materials were shipped, and if the defendants are convicted, they may ultimately be deprived not only of their property, but of their freedom as well.

The government's decision to initiate an obscenity prosecution in a given district is an election to test the community standards of that district. The Court is aware of no reason in law or logic why all of the proceedings relating to the prosecution should not be governed by that district's community standards, including the issuance of search warrants in another district. In this case the government selected Las Vegas as the forum for prosecution. The community standards of Las Vegas should therefore govern all aspects of these proceedings, including the issuance of the search warrant. For the reasons stated above, the affidavit submitted to the magistrate in Los Angeles did not supply a factual basis for independently applying those standards.

### RECOMMENDATION

Based on the foregoing, it is the recommendation of the United States Magistrate Judge for the District of Nevada that the Motion to Suppress Evidence and for the Return of Property (# 40) should be granted.