**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Judith Kay LEVINSON; Elliot Lane
Levinson; Equs Distributing, Inc.,
Defendants–Appellees.**

No. 92–10256.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 8, 1993.

Decided April 7, 1993.

Carl Alexandre, Sp. Atty. from the Dept. of Justice, Washington, DC, for plaintiff-appellant.

John H. Weston, Robert A. Sarno and Clyde F. DeWitt, Weston, Sarno, Garrou & DeWitt, Beverly Hills, CA, for defendants-appellees.

Before GOODWIN, NOONAN, and T.G. NELSON, Circuit Judges.

NOONAN, Circuit Judge:

The United States appeals an order of the district court suppressing evidence in its prosecution of Judith Kay Levinson, Elliot Lane Levinson and Equs Distributing, Inc. (the defendants) for conspiracy against the United States and the transportation of obscene materials in interstate commerce. *United States v. Levinson,* 790 F.Supp. 1472 (D.Nev.1992). We reverse the district court.

## PROCEEDINGS

The United States presented to a magistrate in Los Angeles the affidavit of Allan J. Rogers, Special Agent with the Federal Bureau of Investigation who was assigned to Los Angeles. He sought a search warrant to search Equs Distributing, 5248 Ambridge Drive, located in the greater Los Angeles area. The affiant stated that he knew that Special Agent Roger T. Young, assigned to the Las Vegas office of the FBI, had in February and March of 1990 ordered seven video tapes from Equs and had received them in Las Vegas in April 1990; that Rogers had also worked on the case with Don Smith, a detective in the Vice Division of the Los Angeles Police Department; and that based on his own understanding and that of Young and Smith, there existed probable cause to believe that the videos were obscene under federal law. Rogers recited the definition of obscenity given in *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) and asserted its criteria were met.

Attached to his affidavit was a description of each of the videos setting out each scene in each of them. The activities portrayed consisted almost entirely of explicit sexual acts. Rogers stated that in his opinion the evidence to be found on the premises to be searched would show violations of 18 U.S.C. § 1461 (the use of the mails to mail any "obscene, lewd, lascivious, indecent, filthy, or vile" matter or thing); of 18 U.S.C. § 1462 (use of any common carrier for shipment in interstate commerce of any "obscene, lewd, lascivious, or filthy" film); of 18 U.S.C. § 1465 (transportation in interstate commerce for the purpose of sale or distribution of an "obscene, lewd, lascivious, or filthy" film); of 18 U.S.C. § 1466 (engagement in "a regular course of trade or business, with the objective of earning a profit" by "selling or transferring obscene matter"); of 18 U.S.C. § 1962 (RICO); and 18 U.S.C. § 2 (aiding and abetting) and § 371 (conspiracy). The warrant was executed the following day.

On February 20, 1991 a federal grand jury in Las Vegas, Nevada, indicted defendants for conspiracy to violate the federal obscenity statute by using United Parcel Service to ship the video tapes from California to Nevada and for violating 18 U.S.C. §§ 1462 and 2 by the shipment.

On June 24, 1991 defendants moved to suppress the evidence that had been seized. On January 14, 1992 Magistrate Judge Lawrence R. Leavitt granted the motion. The magistrate judge found the warrant defective because there was no information in it on the community standards of Las Vegas. Without "factual guidance" a magistrate "in a foreign district" had an "impossible" task in determining the community standards of Las Vegas. *Levinson,* 790 F.Supp. at 1476. The magistrate judge added that the Las Vegas standard was applicable because the government "admitted at oral argument that at the time the search warrant was sought the prosecutive decision had already been made to institute criminal proceedings in Las Vegas, not Los Angeles." *Id.*

The district court conducted a de novo review of the record and found the evidence supported the findings in the magistrate judge's report. The motion to suppress was granted. *Id.* at 1472–73. The United States appeals.

## ANALYSIS

That videos are "presumptively protected by the First Amendment," *New York v. P.J. Video, Inc.,* 475 U.S. 868, 869, 106 S.Ct. 1610, 1612, 89 L.Ed.2d 871 (1986) and that "rigorous procedural safeguards must be employed before expressive mate-

rials can be seized as 'obscene' " see *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 62, 109 S.Ct. 916, 927, 103 L.Ed.2d 34 (1989), is hornbook law. The standard for probable cause for the issuance of a search warrant for obscene material has been authoritatively established in *New York v. P.J. Video, Inc.*, 475 U.S. at 875, 106 S.Ct. at 1615, in which the Court rejected the contention that a higher standard of probable cause should be used than in other areas of Fourth Amendment law and concluded, "Any application for a warrant authorizing the seizure of materials presumptively protected by the First Amendment should be evaluated under the same standard of probable cause used to review warrant applications generally." *Id.* That standard had been determined in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). According to *Gates*, "The task of the issuing magistrate is simply to make a practical, common sense, decision whether, given all the circumstances set forth in the affidavit before him, ... there is a fair probability that contraband will be found in a particular place." *Id.* at 238, 103 S.Ct. at 2332.

The affidavit filed by Special Agent Rogers in this case followed exactly the form approved as sufficient in *New York v. P.J. Video, Inc.*, 475 U.S. at 882–84, 106 S.Ct. at 1618–19. There is no dispute that the material was sexually explicit. The videos were described with "the most scrupulous exactitude" required by *Stanford v. Texas*, 379 U.S. 476, 485, 85 S.Ct. 506, 511, 13 L.Ed.2d 431 (1965). The focus was "searchingly on the question of obscenity." *Marcus v. Search Warrant*, 367 U.S. 717, 732, 81 S.Ct. 1708, 1716, 6 L.Ed.2d 1127 (1961). The "factual basis" for the affidavit's conclusions was tangibly present to the magistrate in the descriptions of the videos attached to the affidavit. *Cf. Lee Art Theatre, Inc. v. Virginia*, 392 U.S. 636, 637, 88 S.Ct. 2103, 2104, 20 L.Ed.2d 1313 (1968) (affidavit of police officer stated only the titles of the movies and the conclusion that the movies and the billboard advertising them were obscene). The defendants do not argue that the magistrate judge did not have probable cause to believe that the evidence lacked serious literary, artistic,

political, or scientific value. *See Miller v. California*, 413 U.S. at 24, 93 S.Ct. at 2615. The contention advanced by the defendants is that the affidavit was deficient because it lacked evidence of the community standards in the place where prosecution was to take place.

■ The defendants' contention is erroneous. The crimes, which there was probable cause to believe were being committed, were a variety of crimes, each of which were offenses against the United States in the Los Angeles area of California. The defendants do not dispute the authority of the magistrate to determine the community standards of Los Angeles. Just as a jury determines community standards in a trial for obscenity, *see Smith v. United States*, 431 U.S. 291, 302–05, 97 S.Ct. 1756, 1764–66, 52 L.Ed.2d 324 (1977), so too a magistrate in a locality is presumed to know the standards of the community of which he is a part. Thus, as the defendants concede, the affidavits found unexceptionable in *New York v. P.J. Video, Inc.* contained no reference to community standards; the Court presumed that the magistrate did not have to be informed about the mores of where he lived.

The defendants, conceding what they must, press hard on the fact that the prosecution not only took place in Las Vegas but that Las Vegas was contemplated in advance as the place of prosecution. Hence, they argue, the government's affidavit must have shown that Las Vegas standards were being violated.

■ The defendants' contention is not persuasive. The government had reason to believe that a whole series of crimes had been committed and a whole series of statutes violated. The government was free to prosecute all of these crimes in Los Angeles. Mailing or shipping contraband are crimes committed as much at the start of shipment in interstate commerce as by the arrival of the contraband in another state. *United States v. Kuennen*, 901 F.2d 103, 105 (8th Cir.), *cert. denied*, 498 U.S. 958, 111 S.Ct. 385, 112 L.Ed.2d 395 (1990). At least one of the suspected crimes, that of engaging in the business of selling obscene material, might arguably only have been prosecuted in Los Angeles. The govern-

ment was in no sense estopped from prosecuting the Levinsons in Los Angeles by its internal preliminary decision to prosecute two of the crimes in Las Vegas. The rights of the defendants to be free of an unreasonable seizure were determined in the forum in which the suspected violations and the seizure occurred. This is all the Constitution requires.

Consequently, we hold that the government had no obligation to provide information on the community standards of Las Vegas in the affidavit and that the evidence should not have been suppressed.

REVERSED and REMANDED.