In re RIMSAT, LTD., Debtor.

Kauthar Sdn Bhd, et al., Appellants,

v.

Tongasat, et al., Appellees.

Civ. Nos. 1:98CV363, 1:98CV370.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Feb. 16, 1999.

John P. Sieger, Seyfarth Shaw Fairweather and Geraldson, Joseph A. Baldi, Schwartz and Freeman, Chicago, IL, for appellants.

Warren Anthony Fitch, Swidler and Berlin, Richard H. Wyron, Washington, DC, for appellees.

William N. Howard, Daniel John Voelker, Schwartz and Freeman, Chicago, IL, pro se.

Elliott D. Levin, Rubin and Levin, Indianapolis, IN, trustee.

Mark A. Warsco, Warsco Brogan and Strunk, Fort Wayne, IN, for trustee.

## ORDER

LEE, Chief Judge.

This matter is before the court on two appeals from the Bankruptcy Court's Deci-

sion dated October 2, 1998, imposing sanctions on Kauthar Sdn Bhd ("Kauthar") and its counsel of record, Attorneys William J. Factor ("Factor"), Daniel J. Voelker ("Voelker"), and William N. Howard ("Howard"). The first appeal (1:98cv363) was filed by Factor on November 19, 1998. Factor filed his opening brief on December 18, 1998 and Tongasat filed its response on January 5, 1999. The Trustee also filed a brief in support of the Bankruptcy Court's decision on January 11, 1999. Factor filed his reply on January 21, 1999.

The second appeal (1:98cv370) was filed by Kauthar, Voelker, and Howard on November 30, 1998. Kauthar, Voelker and Howard filed their opening brief on December 18, 1998 and Tongasat filed its response on January 5, 1999. The Trustee also filed a brief in support of the Bankruptcy Court's decision on January 11, 1999. Kauthar, Voelker and Howard filed their reply on January 26, 1999.

### Standard of Review

Pursuant to Bankruptcy Rule 8013, the Bankruptcy Court's legal conclusions are reviewed *de novo*, and its findings of fact are reviewed under the "clearly erroneous" standard. *Matter of Paeplow*, 972 F.2d 730 (7th Cir.1992); *Knepper v. Skekloff*, 154 B.R. 75 (N.D.Ind.1993).

### Discussion

The creditors of Rimsat, Ltd. ("Rimsat") filed a petition for involuntary bankruptcy under Chapter 11 of the Bankruptcy Code on January 27, 1995. On March 3, 1995, the Bankruptcy Court entered an Order for Relief, and the case was administered as a Chapter 11 proceeding until April 22, 1997, when it was converted to a Chapter 7 proceeding. Throughout the next four years the Rimsat litigation occupied a constant position on the docket of both the Bankruptcy Court and this court, as nearly every conceivable bankruptcy issue was litigated (and appealed) in some way, shape, or form. Accordingly, suffice it to say that this court is intimately familiar with the Rimsat bankruptcy case [1], and with the work product of all the attorneys involved, including Voelker, Howard, and Factor.

Judge Grant has presided over the Bankruptcy Court for the Northern District of Indiana, Fort Wayne Division, for over eleven years. He has an obvious love for bankruptcy law and he runs both his docket and courtroom in an orderly, yet personable fashion. He is quick to overlook minor infractions of the rules, and often responds with a witty comment or two. Unfortunately, Kauthar and its counsel consistently took advantage of Judge Grant's good nature. The Bankruptcy Court was inundated with constant motions having little or no merit, which Judge Grant meticulously examined and then disposed of with scholarly, detailed opinions. Finally, after learning the details of a deposition taken of a witness, Mr. Edward Lau, Judge Grant informed Kauthar and its counsel that he had had enough, and sanctions were later imposed.

The appeals presently before this court relate to the decision and order of the Bankruptcy Court, entered October 2, 1998, imposing monetary sanctions against Kauthar and Kauthar's counsel, as well as a revocation of the *pro hac vice* orders permitting Kauthar's counsel to appear before the Bankruptcy Court. As the catalyst for the October 2, 1998 decision was the Lau deposition, this court will now discuss the events surrounding the taking of that deposition.

Kauthar sought to take a number of depositions in connection with its objection to the Trustee's settlement with Tongasat. Among the depositions Kauthar sought was that of Mr. Lau, Tongasat's outside general counsel and the person selected by Tongasat as its Rule 30(b)(6) designee. In accordance with Kauthar's notice of Mr. Lau's deposition and the Bankruptcy Court's August 1, 1997 ruling on the related discovery dispute, Lau's deposition was scheduled for August 11, 1997. Lau arrived for his deposition as scheduled.

---

1. A cursory review of this court's records shows that this court has entertained at least a dozen separate Rimsat-related bankruptcy appeals. Additionally, the *Rimsat* litigation has generated no fewer than three (very lengthy) civil cases docketed directly in this court, plus one miscellaneous case.

However, according to Tongasat, Kauthar's counsel never really asked Lau about the substantive matters relevant to the litigation, even though Lau politely explained which questions he was willing to answer and which questions he opined were within the attorney-client privilege, and would not be answered. When it became apparent to Kauthar's counsel that Lau would not answer the questions they posed, Kauthar's counsel terminated the deposition.

On August 12, 1997, Tongasat filed its Motion for Sanctions and accompanying Memorandum, seeking sanctions against Kauthar's counsel for the Lau deposition. With its Motion, Tongasat submitted affidavits of its trial counsel, detailing fees and costs totaling $10,890.81 incurred directly in connection with preparation for and attending the Lau deposition. The bankruptcy Court had previously scheduled a hearing for August 14, 1997, to consider the Trustee's motion to approve his settlement with Tongasat. This hearing was attended by Voelker, Howard and Factor, as well as by numerous other attorneys. At the August 14, 1997 hearing, as a preliminary matter, Judge Grant brought up the subject of the pending motion for sanctions:

> THE COURT: The other preliminary I want to take up; I'm not going to rule on it; the Tongasat motion for sanctions as a result of Mr. Lau's deposition. As I indicated, I've read that deposition. I'm embarrassed for the profession. In my opinion, the motion makes a very strong case for sanctions. I suspect it is well taken. I do not know. Kauthar has not had the opportunity to respond and they will do so.

> However, it certainly appears that the deposition had a purpose other than investigating the facts and issues that were to be subject of today's hearing.

> Furthermore, I note that both, I think, Mr. Fitch and Mr. Wyron filed affidavits with regard to their time. I'm not necessarily certain that if the motion is well taken, in view of the history of Kauthar's counsel's behavior in this litigation ... For a year they have apparently embarked upon what appears to be a conscious effort to maximize litigation and, in doing so,

make certain that the litigation is as time-consuming, difficult, unpleasant, and expensive as humanly possible. That is something that no Court, no litigant, and no lawyer should ever have to put up with.

> I have admonished. I have warned. I have threatened. For a year. Apparently without success, in view of what the deposition appears to have been. So, I regard the conduct reflected in that deposition as potentially being simply the icing on the cake.

> Because of that, I'm not certain that monetary sanctions are a sufficient response. I am seriously considering vacating the permission that Kauthar's counsel has to practice before the Court in connection with this proceeding. They are not members of this Bar. They are here by my grace on a motion to appear pro hac vice and if they can't behave themselves, neither I nor the members of this Bar should have to put up with it.

> I don't know that that's what I'm going to do. I haven't ruled on the motion. I don't know if sanctions are going to be imposed. I don't know what those sanctions are going to be. But I do think that Kauthar is entitled to, A, to respond and, B, be clued in to my thinking and how very, very serious a situation their counsel find themselves in.

> How much time does Kauthar need to respond to the motion?

> MR. VOELKER: Your Honor, we'd like, since you've indicated that this is a serious matter—

> THE COURT: You're in deep trouble.

> MR. VOELKER: I'm sorry?

> THE COURT: You're in deep trouble.

> MR. VOELKER: I'd like twenty-one days to respond, Your Honor.

August 14, 1997 Hearing Transcript at 5–7.

Kauthar filed its opposition to the motion for sanctions on September 5, 1997. In this opposition, Kauthar and its counsel failed to address whether counsels' *pro hac vice* admissions should be revoked, failed to articulate any due process rights which were implicated, and failed to request that a hearing be held. The Bankruptcy Court took the mat-

ter under advisement on September 16, 1997. On October 2, 1998, the Bankruptcy Court issued its decision, and issued its orders imposing sanctions and striking counsels' *pro hac vice* admissions. Motions for reconsideration were filed and denied, upon the grounds that matters presented in the motion to reconsider were presented or could have been presented in response to the original motion.

■ In response to the current appeals, Tongasat argues that after having consciously chosen not to present any of their arguments on these issues before the Bankruptcy Court in opposition to the sanctions motion, neither Kauthar nor its counsel may now be heard on these issues on appeal. This court agrees with Tongasat. By failing to request a hearing until after sanctions were imposed and by raising the "due process" issue for the first time in motions for reconsideration, Kauthar and its counsel waived any right to pursue these issues. *Green v. Whiteco Industries, Inc.*, 17 F.3d 199, 201 (7th Cir.1994)("raising the argument for the first time in the motion for reconsideration is not adequate to preserve the issue for appeal and definitely waives it"); *Matter of Kroner*, 953 F.2d 317, 320 (7th Cir.1992).

Nevertheless, even though it need not do so, this court will consider the appellants' arguments.

*Attorney William J. Factor*

Factor has been counsel of record for Kauthar since September 1996. Although Factor was the attorney who noticed Mr. Lau's deposition, he did not personally attend the Lau deposition. Thus, Factor's primary argument is that he is being punished for a misdeed in which he took no part. Factor acknowledges that Judge Grant had informed all counsel that the Lau deposition was merely the "icing on the cake", and that he was considering sanctions as a result of the way the case had been handled for the year preceding the Lau deposition. Yet, Factor argues that since no sanctions were issued until after the Lau deposition, the prior conduct must not have been sanctionable, and thus he was sanctioned solely for events that transpired at a deposition which he did not attend.

This court finds Factor's argument to be too simplistic. The fact that sanctions were not imposed until after the Lau deposition merely shows the great patience with which Judge Grant presided over the case. Likewise, the fact that Judge Grant imposed limited sanctions, and did not issue a broad Rule 11 order encompassing the entire year prior to the deposition, shows the restraint with which he used his inherent power to discipline attorneys who practice before him [2].

Factor also argues that the Bankruptcy Court had no factual or legal basis for sanctioning him in connection with the Lau deposition. A review of the Bankruptcy Court's decision, however, reveals otherwise. The Bankruptcy Court specifically found that:

> The fact that [Kauthar's] motion to compel the deposition of the Princess was already prepared and served, before the deposition, supports the court's conclusion that Kauthar had not intention of even trying to obtain relevant information from Mr. Lau and that the decision had been made to sabotage the deposition in advance. Indeed, had Mr. Lau's deposition been successfully completed, Kauthar would have had no basis to seek or depose the Princess. Kauthar's counsel have violated the spirit of the discovery rules by using the deposition "as a tactical weapon rather than to explore [the] claims and the facts connected therewith." (citations omitted).

Decision of October 2, 1998, at 7. Factor contends that the deposition of the Princess would have been sought regardless of the outcome of the Lau deposition, and that he had no knowledge of the manner in which the Lau deposition would proceed when he served the notice of that deposition.

---

**2.** It is noteworthy that Judge Grant's restraint, and his lack of favoritism, was clearly shown by the fact Tongasat filed as part of its reply the affidavits of Mr. Lau and his colleague, Mr. Wong, for their fees and expenses totaling $10,- 975.00 in addition to the fees and expenses previously sought. Judge Grant declined to consider these additional fees and expenses because the affidavits were not filed with the original motion.

■ This court reviews the Bankruptcy Court's factual findings under a "clearly erroneous" standard. Without a doubt, the Bankruptcy Court's factual findings with respect to Factor's culpability were not clearly erroneous. Judge Grant was intimately familiar with the Kauthar/Tongasat discovery disputes, including the roles played by the various counsel that appeared before him. Clearly, he did not view Factor as a mere "paper-signer" who had no knowledge of the discovery strategy underlying the notice of deposition. This court finds absolutely no reason to disturb the Bankruptcy Court's finding that Factor was a party to the misconduct that occurred during the Lau deposition. Moreover, under Rule 26(g) and Bankruptcy Rule 9011, sanctions are appropriately imposed upon the attorney who signed the offending document. *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 122–25, 110 S.Ct. 456, 458–59, 107 L.Ed.2d 438 (1989); *Melrose v. Shearson/American Express, Inc.*, 898 F.2d 1209, 1217 (7th Cir. 1990). Therefore, as the signing attorney, Factor had a duty to insure that the deposition was properly conducted. Factor cannot escape the duties imposed upon him by established rules by simply not attending the deposition. The Bankruptcy Court did not sanction Factor pursuant to these rules[3] merely because it felt it would be unfair to single out Factor, and the rules at that time did not permit the sanctioning of any other than the signing attorney[4]. Nevertheless, it remains true that Factor clearly (and undoubtedly knowingly) could be held responsible for the manner in which the deposition was conducted[5].

Factor next argues that the Bankruptcy Court deprived him of due process by failing to provide specific notice that he might be sanctioned. Factor contends that he did not defend himself in the Bankruptcy Court because he did not have specific notice that his conduct was at issue. Factor states that the Bankruptcy Court never named Factor as a target for sanctions, did not direct its comments to Factor, single Factor out, or take issue with Factor's conduct. Factor also argues that Tongasat's motion for sanctions did not provide Factor with specific notice that he might be sanctioned.

Factor's arguments are specious, at best. Factor was present at the August 14, 1997 hearing in which Judge Grant informed Kauthar's counsel that they were in "deep trouble". Factor was present at that hearing in his capacity as "Kauthar's counsel", and he had been Kauthar's counsel of record for nearly a year. Factor signed the notice of deposition that was the subject of Judge Grant's discussion at the August 14, 1998 hearing and, as an experienced attorney, surely understood that an attorney's act of signing a legal document bears significance. Kauthar was given ample opportunity to respond to the motion for sanctions. In fact, Judge Grant specifically asked counsel how many days they needed to respond, and they indicated that 21 days was sufficient. Yet, as the Bankruptcy Court's Decision notes, most of Kauthar's response was devoted to arguing about Judge Grant's ruling on Tongasat's motion for protective order and claiming that Tongasat should be sanctioned, and not Kauthar[6].

■ The record is clear that Factor had specific notice that the Bankruptcy Court was considering sanctioning him, and that it was also considering revoking his *pro hac*

---

3. The Bankruptcy Court found that sanctions under 11 U.S.C. § 105(a), for abuse of the judicial process, were more appropriate in this case because all three attorneys could be sanctioned equally under that provision. Decision at 8.

4. Rule 11 was amended in 1993 to permit sanctions to be imposed upon an entire law firm. However a similar amendment to Bankruptcy Rule 9011 did not become effective until December 1, 1997. Since the actions of Kauthar's counsel occurred before that date, the prior version of Rule 9011 would apply.

5. Factor also argues that since the Lau deposition was subject to a motion to compel, which motion the Bankruptcy Court granted thereby ordering Mr. Lau to appear to be deposed, that somehow the Bankruptcy Court was responsible for the fact that Mr. Lau was deposed. This argument is clearly meritless. The Bankruptcy Court simply decides issues that are before it. When ordering a party to appear to be deposed, it goes without saying that the court expects counsel to behave.

6. October 2, 1998 Decision at 7.

*vice* admission. Factor simply either failed to pay attention, or failed to take the notice seriously. Ironically, Factor's argument that he did not have notice underscores Judge Grant's lament that "I have admonished. I have warned. I have threatened. For a year. Apparently without success..." It is clear that the Bankruptcy Court was unable to get counsels' attention without actually taking the step of formally imposing sanctions [7]. Factor also argues that he was denied a hearing before the Bankruptcy Court. This is simply incorrect. Factor never *requested* a hearing. Moreover, the response that Kauthar's counsel did submit consisted primarily of "finger pointing" and trying to blame Tongasat for the problems that arose during the Lau deposition. If Factor had presented factual disputes concerning whether he, personally, deserved to be sanctioned, it is certain that Judge Grant would have held a hearing to discuss the issues presented [8].

■ Finally, Factor argues that his *pro hac vice* privilege should not have been revoked. Factor states that he "should not be made to pay for the rest of his professional life merely for sending a notice of deposition", that "his career as an attorney has been permanently stained", and that "revoking a *pro hac vice* privilege places an indelible stain on one's reputation and ability to practice law." Factor appears to be overreacting a bit here. Notably, Factor has not cited to any specific details as to how his career has been permanently stained, or his ability to practice law has been or will be hindered. While a revocation of *pro hac vice* privilege may be the source of considerable professional embarrassment, it is in fact a fairly limited sanction. This is especially true in this case because, as Factor acknowledges in his opening brief, he does not even presently represent Kauthar. Although Fac-

tor likens the revocation of *pro hac vice* admission to disbarment, such a comparison is exaggerated. Factor is not disbarred from Judge Grant's court. If he wishes to appear *pro hac vice* in another proceeding, he may apply to do so.

Factor also claims that Judge Grant had lesser sanctions available via Rules 7026 and Rule 9011, but impermissibly chose the harshest sanction via § 105(a). Again, Factor is incorrect. Judge Grant could have fashioned any sanction against Factor pursuant to any of the above provisions. Judge Grant chose to invoke § 105(a) because it permitted him to sanction all three attorneys equally [9]. Clearly, this is not an abuse of discretion. Accordingly, for all the above reasons, the Bankruptcy Court's Decision imposing sanctions on Attorney Factor will be affirmed.

### Attorneys Daniel J. Voelker and William N. Howard

Attorneys Voelker and Howard, who admittedly were present during the Lau deposition, argue that the Bankruptcy Court failed to cite evidence that any improper behavior occurred during the deposition. A review of the Bankruptcy Court's decision shows otherwise:

> The deposition lasted less than an hour until it was terminated by Kauthar. During that time, Mr. Lau was subjected to abusive examination and improper questioning, which served no other purpose than to harass. The transcript is replete with examples of inappropriate questioning, incivility and the uncalled for abuse of a deponent by Mr. Voelker. Not once did he make even a half-hearted effort to ask Mr. Lau questions relating to the substance of the claims being compromised, Tongasat's relationship and/or negotiations

---

**7.** Factor takes issue with Judge Grant's statement that he warned counsel about their conduct, and points out that Judge Grant has not cited from the record indicating when such statements were said. Clearly, however, Judge Grant can take judicial notice of his own proceedings.

**8.** In fact, Judge Grant specifically noted that he would schedule a further hearing, if it appeared to be needed, after the parties had fully briefed

the pending motion for sanctions. Transcript of August 14, 1997 Hearing, at 8.

**9.** As Judge Grant specifically stated: "Consequently, although Kauthar's attorneys have acted in concert and are all deserving of sanction for their roles in Kauthar's discovery abuse, Rules 26(g) and 9011 are not the vehicles by which this can be accomplished." Decision at 8.

with the Russians, or Tongasat's negotiations or communications with the Chapter 7 trustee regarding the proposed compromise. Although Mr. Lau indicated his willingness to answer appropriate questions and even suggested possible topics, (*see* Lau Dep. at pp. 65–66), Mr. Voelker chose not to do so. Instead, he persisted in asking questions that related to things other than the compromise that could only have been designed with the specific purpose of drawing an objection.

Decision at 2.

■ Without a doubt, this is a clear, concise description of the evidence supporting the decision. Although Voelker and Howard argue that there is not a line by line notation of specific misconduct, such notation is not required, especially in a case such as this where the improper conduct was as much in what counsel *didn't* ask as in what it did ask. This court has read a substantial portion of the Lau deposition, and fails to find the Bankruptcy Court's characterization of the deposition to be "clearly erroneous". *See e.g.,* Lau Dep. at 13–14, 20, 25–40, 41, 43–46, 48–52, 53, 59, 66–68, for examples of questioning about completely irrelevant matters. Mr. Lau repeatedly attempted to guide the questioning to areas in which he was able to provide information:

MR. LAU: I already stated that if its in the boundaries of ·30(b)(6) information, I will be happy to share that with you. If it involves other private discussions of an attorney-client privilege that have nothing to do with this case, I will not answer those questions.

\*  \*  \*  \*  \*  \*

MR. LAU: Well, if you ask certain questions either through production or through questions of the nature of the 30(b)(6), like questions relating to some financial information, and that was one of the topics that you had asked for as the subject matter of depositions.

I went back to Tongasat officials, which may include the Princess, to gather that information and I got that information.

You can ask me those questions, and I'll be more than happy to answer.

\*  \*  \*  \*  \*  \*

MR. LAU: . . . If you want to ask me a question that I feel is the 30(b)(6) witness type of question, I will answer honestly. If it is outside that, and it involved an attorney-client privilege, the answer is no. I will not answer those.

Lau Dep. at 64–67, 70–71.

Rather than asking the questions that pertained to the subject matter of the deposition, Kauthar's counsel accused Mr. Lau of "dancing around", and asked irrelevant and impossible questions like "I want to know everything [the Princess] said to you, Mr. Lau, every single word she uttered." *Id.* at 70. When Mr. Lau again recited that there was a broad spectrum of 30(b)(6) questions he could be asked, Kauthar's counsel terminated the deposition. *Id.* at 71. Again, this court finds that the Bankruptcy Court's findings are fully supported by the record and are in no way "clearly erroneous."

Like Attorney Factor, Voelker and Howard argue that they were denied due process because they did not receive specific notice before being sanctioned and they did not receive a hearing before the Bankruptcy Court on the issue of whether their *pro hac vice* admissions should be revoked. This court's analysis of these arguments was set forth above with respect to Factor's appeal, and will not be repeated here. Voelker and Howard also argue that the Bankruptcy Court erred as a matter of law because it did not follow the procedures set forth in the Local Rules for the District Court for the Northern District of Indiana, L.R. 83.6.5, which deals with attorney disciplinary proceedings. To the extent that L.R. 83.6.5 is even applicable to Bankruptcy Court proceedings, the Bankruptcy Court clearly complied with the Rule, as it gave Kauthar's counsel notice and an opportunity to respond.

■ Finally, Voelker and Howard have requested that this court expunge six passages from the Bankruptcy Court's Decision, claiming that the comments are not supported by evidence in the record of this case. Not surprisingly, Voelker and Howard have failed

to cite any authority in support of their request. While this court does not believe that any part of the Bankruptcy Court's Decision is unsupported by evidence or in any other way deserves to be expunged, even if this court disagreed with the Decision the most it could do would be to reverse and/or vacate the Decision. Even then, the Decision would remain a permanent part of the record in this case.

For all of the foregoing reasons, The Bankruptcy Court's Decision imposing sanctions on Attorney Voelker and Attorney Howard will be affirmed.

### Conclusion

The Decision of the Bankruptcy Court dated October 2, 1998 is hereby AFFIRMED in its entirety.