In the

# United States Court of Appeals
### For the Seventh Circuit

No. 11-1787

IN RE:

HOLLY MARINE TOWING, INCORPORATED,

*Debtor.*

APPEAL OF:

SCOULER & COMPANY.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:10-cv-01204—**Virginia M. Kendall,** *Judge.*

ARGUED SEPTEMBER 22, 2011—DECIDED JANUARY 6, 2012

Before BAUER, MANION and KANNE, *Circuit Judges.*

BAUER, *Circuit Judge.* The debtor, Holly Marine Towing, Inc., filed for bankruptcy. The principals of the company reached a settlement during the bankruptcy proceedings that divided up funds from the sale of certain property. As part of that agreement, the company's bankruptcy attorneys received a portion of the proceeds as payment for their services. The bankruptcy court issued an order approving the settlement. The appellant, Scouler & Com-

pany, LLC, then moved under Federal Rule of Civil Procedure 59 to amend that order, challenging the payout to the estate's bankruptcy attorneys. The bankruptcy court denied the motion. Scouler & Company appealed to the district court, arguing that the settlement violated the Bankruptcy Code's rule of priorities and that it was not in the best interest of the estate. The district court disagreed, affirming the bankruptcy court's order. This appeal followed. Finding no error on the part of the district court, we affirm.

## I. BACKGROUND

Holly Marine Towing, Inc. ("Holly Marine") was a Chicago company that owned and operated a tug boat service on Lake Michigan. The company filed for Chapter 11 bankruptcy on January 8, 2007, and the bankruptcy court converted the case to a Chapter 7 liquidation bankruptcy the following year. A trustee was appointed to manage the estate's assets and pay off creditors.

During the proceedings, a dispute arose over the sale of property at 9320 South Ewing Avenue ("Ewing property") in Chicago, the site at which Holly Marine operated its business. Several competing claims to the Ewing property surfaced. Glenn Dawson ("Dawson") and Holly Headland ("Headland"), Holly Marine's principals, were going through a divorce, and each sought to establish ownership interests in the property. Separately, Holly Marine had brought claims against Dawson for breach of fiduciary duty and usurping corporate opportunities and sought to have the Ewing property declared an asset of the bankruptcy estate.

The parties reached a settlement that divided up the $911,620.40 from the sale of the Ewing property. Headland and Dawson each received 25% ($229,126.09) of the proceeds while the bankruptcy estate received the other 50% ($458,252.18) through its trustee. Dawson and Headland paid Holly Marine's bankruptcy attorneys, Bauch & Michaels, LLC ("Bauch"), a total of $65,000 from their personal share of the proceeds as part of the agreement.

The appellant, Scouler & Company, LLC ("Scouler"), is a financial services firm and a creditor of the bankruptcy estate that provided financial consulting services to Holly Marine during the Chapter 11 bankruptcy proceedings. Scouler objected to the $65,000 payout to Bauch in the settlement agreement, believing that a portion of those funds should have been distributed to it and other Chapter 11 creditors. It thus challenged the bankruptcy court's order approving the settlement.

## II. DISCUSSION

The bankruptcy court issued an order under Bankruptcy Rule 9019(a) approving the settlement entered into by the trustee, Headland, and Dawson. Scouler challenged the settlement by seeking to amend the order through Federal Rule of Civil Procedure 59(e). The motion under Rule 59 was denied by the bankruptcy court, and the district court affirmed that denial. Scouler now reasserts the two primary arguments it made below. First, it argues that the payout to Bauch was an impermissible bypass of the bankruptcy code's rule of priorities, which would have required a pro rata distribu-

tion of Bauch's $65,000 to all the Chapter 11 administrative creditors. Second, it argues that the settlement agreement was not in the best interests of the estate. Bauch and the trustee respond that the assets transferred to Bauch were non-estate assets and so the rule of priorities should not apply. They also argue that Scouler's appeal should be dismissed for lack of standing.

We will not disturb a bankruptcy court's approval of a settlement unless such approval constituted an abuse of discretion. *In re Doctors Hosp. of Hyde Park, Inc.*, 474 F.3d 421, 426 (7th Cir. 2007). This standard is highly deferential since the bankruptcy court is in the best position to consider the reasonableness of a particular settlement. *See id.* We review questions of fact for clear error and questions of law *de novo*. *Id.*

### A.  Scouler's Standing to Challenge the Settlement

To have standing to challenge a bankruptcy order, the challenger must be a "person aggrieved" by that order; in other words, he must demonstrate that he has "'a pecuniary interest in the outcome of the bankruptcy proceedings.'" *In re Resource Tech. Corp.*, 624 F.3d 376, 382-83 (7th Cir. 2010) (quoting *In re Cult Awareness Network, Inc.*, 151 F.3d 605, 607 (7th Cir. 1998)). This requirement promotes judicial efficiency by ensuring that only those parties who are "directly and adversely affected" by a bankruptcy order are able to challenge it. *See In re Fondiller*, 707 F.2d 441, 442 (7th Cir. 1983). Whether a challenger has a pecuniary interest in a bankruptcy

order is a question of fact, and so we review for clear error. *In re Ray*, 597 F.3d 871, 875 (7th Cir. 2010) (citation omitted).

Bauch and the trustee contend that Scouler has no pecuniary interest in this matter because the $65,000 payment to Bauch, if disgorged as Scouler requests, would revert back to Headland and Dawson rather than to the estate. As part of Headland's and Dawson's personal funds, that amount would be unreachable by Scouler. If Scouler cannot reach that amount, then it has no pecuniary interest, they argue. But this is exactly the aspect of the settlement that Scouler challenges: the distribution of assets between the estate and its principals, and whether that distribution was in the estate's best interests. No party disputes that Scouler provided services to the estate during the Chapter 11 proceedings. Indeed, the bankruptcy court approved a fee application from Scouler, finding the company was entitled to $24,094.88 for its work. Thus, Scouler has a clear pecuniary interest in the management of the estate's assets. The parties' arguments over the reasonableness of the settlement and which assets belong to the estate go to the merits of this dispute. Even if Scouler's claims ultimately fail, that does not negate its demonstrated "pecuniary stake in the manner in which the estate is liquidated." *See In re Cult Awareness Network*, 151 F.3d at 610. We find no error in the district court's determination that Scouler has a pecuniary interest in the settlement.

**B. The Priority Scheme**

The Bankruptcy Code sets forth a priority scheme dictating the order in which various creditors' claims will be satisfied in the course of bankruptcy proceedings. *See, e.g.*, 11 U.S.C. § 726; 11 U.S.C. § 503; 11 U.S.C. § 507. When a Chapter 11 case is converted to a Chapter 7 liquidation bankruptcy, Chapter 7 administrative creditors—those who provided administrative services to the estate during the Chapter 7 proceedings—hold priority over the Chapter 11 administrative creditors. 11 U.S.C. § 726(b); *In re Resource Tech. Corp.*, 356 B.R. 435, 443 (Bankr. N.D. Ill. 2006). If there are insufficient funds left to satisfy all Chapter 11 administrative claims, the leftover value of the estate is distributed to these Chapter 11 creditors on a pro rata basis. *In re Resource Tech. Corp.*, 356 B.R. at 448. But such distributions under the priority scheme apply only to the "property of the estate." 11 U.S.C. § 726(a).

Scouler's claim failed, the district court explained, because the distribution to Bauch involved non-estate assets. We find no clear error in that determination. The record reflects a careful consideration by the bankruptcy court of all the competing interests involved in the sale of the Ewing property. Holly Marine was not the only party to claim an ownership interest; Headland and Dawson also had competing claims to that property which surfaced as part of the marital dissolution. And the $65,000 payout to Bauch was taken from both Dawson's and Headland's individual $229,126.09 interest in the Ewing property. The bankruptcy court

explicitly recognized this fact during a January 20, 2010 hearing on Scouler's Rule 59 motion to amend the bankruptcy settlement:

> How is [the $65,000] going to go back to the estate? This was Holly Headland's funds that went to Bauch & Michaels, correct? She made a decision that she wanted to give some of the money she was going to get in settlement, for whatever reason, to Bauch & Michaels.

Because the funds paid to Bauch were never assets of the estate, the priority scheme simply does not apply. *See, e.g.*, *In re Columbia Gas Systems, Inc.*, 997 F.2d 1039, 1059 n.6 (3d Cir. 1993) (noting that if funds "are excluded from the bankruptcy estate, the priority scheme is not implicated because it only controls how to divide assets contained in the bankruptcy estate."); *In re Hargis*, 887 F.2d 77, 79 (5th Cir. 1989) (holding that the bankruptcy court had "no authority to order disgorgement of the funds received . . . which consisted wholly of non-estate assets."); *In re Tackley Mill, LLC*, 386 B.R. 611, 615 (Bankr. N.D. W. Va. 2008) (explaining that the distribution of non-estate assets falls outside of the Bankruptcy Code). Scouler thus cannot have the $65,000 payment disgorged on these grounds.

Scouler relies heavily on two cases for most of its argument: *In re Resource Tech. Corp.*, 356 B.R. 435, 443 (Bankr. N.D. Ill. 2006), and an unpublished "tentative ruling," *In re Golden Bear Oil Specialties*, No. 01-BK-22467 (Bankr. C.D. Cal. Nov. 7, 2001). Reliance on these cases is misplaced because both involved assets of the estate. Scouler

never clearly articulates how the funds at issue here can be considered assets of the bankruptcy estate. In *Golden Bear*, for example, a committee of creditors agreed to relinquish legal claims against certain lenders on behalf of the bankruptcy estate in exchange for funds; the court found that it was really the estate in this situation that was providing consideration, and so the estate should receive the benefit of the bargain. Thus, in that case, the funds involved in the settlement were estate funds. In this case, the estate agreed to settle claims against Dawson, and it certainly provided consideration (relinquishing a claim to the Ewing property) in exchange for the certainty of the settlement value. The money paid to Bauch is an entirely different matter; that payout was negotiated after the bankruptcy court had already allocated the value of the Ewing property among the estate, Dawson, and Headland. Scouler cannot show clear error in the lower court's determination that the $65,000 actually belonged to Dawson and Headland rather than to the estate.

## C.  The Best Interests of the Estate

A bankruptcy court may approve a settlement agreement only if it is in the best interest of the bankruptcy estate. *In re Doctors Hosp. of Hyde Park, Inc.*, 474 F.3d 421, 426 (7th Cir. 2007). In making this determination, the court must weigh the costs and benefits of litigation versus settlement. *Id*. If the proposed settlement falls into "the reasonable range of possible litigation outcomes," then it will pass the "best interests" test. *Id*. (citations omitted).

We have already noted the bankruptcy court's careful consideration of the interests involved in approving this agreement. There were several competing claims to the Ewing property. Although Dawson held title, the estate was suing him for breach of fiduciary duty and usurpation of corporate opportunity; Headland also asserted an interest in the property through the marital dissolution. As the district court noted, one of the several issues that might have been litigated was whether the Ewing property was held out as the estate's asset or Dawson's personal asset. *See In re Kaiser*, 791 F.2d 73, 77 (7th Cir. 1986). If the parties had litigated that issue, one possible outcome would have been that the Ewing property went entirely to Dawson and not to the estate, a much worse outcome for the estate's creditors. The parties chose to forego the uncertainty of litigation and settled this dispute in a way that the bankruptcy court viewed as equitable. The 50% of the value of the Ewing property that the estate received was within "the reasonable range of possible litigation outcomes." The bankruptcy court did not abuse its discretion in approving this agreement.

## III. CONCLUSION

We AFFIRM the decision of the district court upholding the settlement agreement and denying the appellees' motion to dismiss for lack of standing.