In the Matter of John Arthur
WITT, Debtor.

No. 11–10609.

United States Bankruptcy Court,
N.D. Indiana,
Fort Wayne Division.

Oct. 18, 2012.

Eric D. Orr, Berne, IN, for Debtor.

### DECISION REGARDING SANCTIONS

ROBERT E. GRANT, Chief Judge.

The trustee in this chapter 7 case previously filed a motion to compromise environmental litigation that arose out of real estate the debtor owned. The debtor and its environmental expert, HydroTech, objected to the motion. The issues raised by the motion and objection were the subject of a trial and the parties were then given

the opportunity to file post-trial briefs, after which the matter was taken under advisement. By a decision issued on May 10, 2012, the objections were overruled. *See, Matter of Witt,* 473 B.R. 284 (Bankr. N.D.Ind.2012). Because it appeared that some of the arguments the debtor and HydroTech presented in their jointly filed post-trial brief were not warranted by existing law or a non-frivolous argument for its extension, and that a reasonable pre-filing inquiry would have revealed the lack of merit, the court, on its own initiative, scheduled a hearing to consider whether counsel for the objectors, Eric Orr and Mark Shere,[1] violated the requirements Rule 9011(b)(2) of the Federal Rules of Bankruptcy Procedure. *See,* Notice of Hearing dated June 14, 2012. Counsel filed a timely response to the court's inquiry and the matter was taken under advisement following the scheduled hearing.

■ The court's notice of hearing identified four aspects of the brief or arguments it contained that were of particular concern:

1. Failing to mention or attempting to apply the standard associated with approval of settlements and compromises in bankruptcy;

2. That the doctrine of promissory estoppel applied to the manner in which a trustee administers a bankruptcy estate and failing to acknowledge relevant Indiana authority that an expression of intent is not a promise;

3. Mischaracterizing the Supreme Court's decision in *Schwab v. Reilly* regarding the effect of the debtor's claimed exemption and ignoring the Court's holding in that decision, and;

4. Misrepresenting the Seventh Circuit's decision in *Hoseman v. Weinschneider,* by quoting it out of context, when arguing that the trustee had waived claims.

■ Rule 9011 is the bankruptcy equivalent of Rule 11 of the Federal Rules of Civil Procedure. Like Rule 11, it imposes an affirmative obligation upon counsel to conduct a reasonable investigation into both the law and the facts before presenting ("whether by signing, filing, submitting or advocating") a particular position ("a petition, pleading, written motion, or other paper") to the court. *See,* Fed. R. Bankr.P. Rule 9011(b). *See also, Frantz v. United States Powerlifting Federation,* 836 F.2d 1063, 1064 (7th Cir.1987); *Fred A. Smith Lumber Co. v. Edidin,* 845 F.2d 750, 751 (7th Cir.1988); *McGhee v. Sanilac County,* 934 F.2d 89, 93 (6th Cir. 1991); *Slater v. Skyhawk Transp., Inc.,* 187 F.R.D. 211, 220 (D.N.J.1999); *Terminix Int'l Co. v. Kay,* 150 F.R.D. 532, 538 (E.D.Pa.1993). The results of that investigation must lead to the conclusion that the position being taken by counsel is warranted by existing law or by a non-frivolous argument. Whether or not the obligations imposed by Rule 11 have been fulfilled "is an objective determination of whether [counsel's] conduct was reasonable under the circumstances." *Brown v. Federation of State Medical Boards of the U.S.,* 830 F.2d 1429, 1435 (7th Cir.1987). *See also, In re Ronco,* 838 F.2d 212, 217 (7th Cir. 1988) ("litigation must be grounded in an objectively reasonable view of the facts and the law"). Consequently, the court must "undertake an objective inquiry into whether … counsel 'should have known his position was groundless'…." *Dist. No. 8 International Association v. Clearing,*

---

[1] Mr. Orr represents the debtor. Mr. Shere has filed an appearance for both the debtor and Hydro–Tech.

807 F.2d 618, 622 (7th Cir.1986) (quoting *Coleman v. CIR*, 791 F.2d 68, 71 (7th Cir.1986)). In determining whether an attorney's pre-filing inquiry was reasonable, the court must consider the circumstances of the particular case. *Mars Steel Corp. v. Continental*, 880 F.2d 928, 932 (7th Cir. 1989)(en banc); *In re Excello Press*, 967 F.2d 1109, 1112–13 (7th Cir.1992). Nonetheless, "every lawyer must do the necessary work to find the law before filing...." *Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir.1986). *See also, Chambers v. American Trans Air, Inc.*, 17 F.3d 998, 1007 (7th Cir.1994).

■■■ In considering a motion to compromise, the relevant inquiry is simple and straight-forward: Is the proposed settlement in the best interests of the bankruptcy estate? *Matter of Energy Cooperative, Inc.*, 886 F.2d 921, 927 (7th Cir.1989). In answering that question, the court should determine whether the trustee adequately investigated the matter and made an informed decision when choosing between the available alternatives, *see, In re Del Grosso*, 106 B.R. 165, 168–69 (Bankr. N.D.Ill.1989); *see also, In re Big Horn Land & Cattle Co., LLC*, 2010 Bankr.LEXIS 1088 (Bankr.N.D.Ind.2010); if so, it should then decide whether the settlement's terms "fall within the reasonable range of litigation possibilities." *Energy Co–op.*, 886 F.2d at 929 (quoting *In re New York, N.H. & H.R. Co.*, 632 F.2d 955 (2nd Cir.1980)). If they do, the settlement should be approved. Only if the proposed settlement falls below the lowest point in the range of those possibilities should the court withhold its approval. *Energy Co-op.*, 886 F.2d at 929 (quoting *In re W.T. Grant, Co.*, 699 F.2d 599, 608 (2nd Cir. 1983)).

Despite the wealth of authority from the Seventh Circuit establishing this test as the governing legal standard, *see e.g., In re*

*Holly Marine Towing, Inc.*, 669 F.3d 796, 801 (7th Cir.2012); *In re Doctors Hospital of Hyde Park, Inc.*, 474 F.3d 421 (7th Cir.2007); *Depoister v. Mary M. Holloway Foundation*, 36 F.3d 582, 585–86 (7th Cir. 1994); *Matter of Andreuccetti*, 975 F.2d 413, 420–21 (7th Cir.1992); *Matter of Energy Co–op., Inc.*, 886 F.2d 921, 929 (7th Cir.1989); *In re American Reserve Corp.*, 841 F.2d 159, 162 (7th Cir.1987), in their brief on the issue counsel never mentioned or attempted to apply it to the case at hand. This is the court's first concern in its sanctions inquiry. Counsels' response to this concern confuses it with identifying and applying the applicable standard of review on appeal and they argue that Rules 27 and 28 of the Federal Rules of Appellate Procedure do not apply. They also claim the matter presented unusual facts and issues. As to the first point, the court agrees with counsel that appellate rules related to the contents of legal briefs and the applicable standard of review do not apply here, but those rules are not the basis for the court's concern. The issue is whether counsel can properly file a legal brief directed to a particular issue without ever mentioning or attempting to apply the governing legal standard.

■■■ In any brief, to any court, attorneys have a duty to acknowledge and address the legal standard that governs the matter before it. *See, DeSisto College Inc. v. Line*, 888 F.2d 755, 766 (11th Cir.1989) ("Counsel had a duty to acknowledge at some point ... the binding precedent of this circuit ..."); *Jewelpak Corp. v. U.S.*, 297 F.3d 1326, 1333 n. 6 (Fed.Cir.2002) ("officers of this court have an unfailing duty to bring to our attention the most relevant precedent that bears on the case at hand—both good and bad—of which they are aware."); *Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir.1986) ("an advocate must represent his client within the

existing structure of the law, and not some imagined version of it."). To fail to do so renders the resulting brief irrelevant as an effective aid to help guide the court's decision, and that is the ultimate purpose of any brief—to educate and guide the court's decision. *In re King,* 2006 WL 1994679, 2006 Bankr.LEXIS 1416 (Bankr.N.D.Ind. 2006). Counsel may not like the governing standard and its application may not produce an outcome to their client's liking, but that does not permit counsel to ignore it and pretend it does not exist.

■■■■ Counsels' claim that this case presents unusual facts and issues does not excuse their failure to acknowledge the governing legal standard. Assuming they exist, unusual facts and issues might give counsel a basis for arguing that the governing standard is incomplete or inadequate, or that it should be changed or subject to some sort of proviso. In the language of Rule 11, "an argument for an extension, modification, or reversal of existing law or the establishment of new law." Fed. R. Bankr.P. Rule 9011(b)(2). Yet, counsel never made such an argument.[2] To do so requires one to first acknowledge, not ignore, existing law. *Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d 1073, 1081–82 (7th Cir.1987); *Thornton,* 787 F.2d at 1154. *See also, Matter of Hendrix,* 986 F.2d 195, 200–01 (7th Cir.1993) (discussing Appellate Rule 38). Having acknowledged existing law, counsel are then free to argue that it should not apply or should be somehow changed. *Thornton,* 787 F.2d at 1154; *Hendrix,* 986 F.2d at 200; *DeSisto College,* 888 F.2d at 766. When they fail to proceed in that fashion, "then it is appropriate to conclude that counsel are not engaged in trying to change the law; counsel either are trying to buffalo the court or have not done their homework. Either way Rule 11 requires the court to impose a sanction...." *Szabo Food Service,* 823 F.2d at 1082.

The court's second concern involves counsels' argument that the doctrine of promissory estoppel required the trustee to abandon the asset. Their argument was that the trustee made a promise when he indicated he would be filing a motion for abandonment in a letter he submitted to the state court and, because that court acted upon it in connection with cancelling an upcoming hearing, he was bound to follow that course of action. Although counsel cited the elements related to promissory estoppel, their argument was not supported by a single bankruptcy decision that used the doctrine to force a trustee to administer the estate in a particular way. Furthermore, counsel never made any attempt to apply the individual elements of the doctrine to the facts at hand. They simply laid out the elements and asserted each of them had been satisfied, without explaining how. In doing so, they failed to locate or mention Indiana authority that "the mere expression of an intention is not a promise." *Security Bank & Trust Co. v. Bogard,* 494 N.E.2d 965, 969 (Ind.App.1986).

In their response to the sanctions inquiry, counsel indicated that they investigated the applicability of promissory estoppel to bankruptcy trustees "with reasonable diligence (including numerous Casemaker electronic searches) and found no authority one way or the other." So, they claimed it was "reasonable to argue that a trustee may be bound as any other party, with respect to state law claims ..." Response to Order to Show Cause, filed June 28,

---

**2.** In its Rule 11 inquiry, the court must focus on the arguments counsel actually made, not arguments that might have been, but were not, advanced. *Beverly Gravel, Inc. v. DiDomenico,* 908 F.2d 223, 225 (7th Cir.1990); *In re Ronco,* 838 F.2d 212, 218 (7th Cir.1988).

2012, pg. 7.[3] They then go on to contend that their argument was reasonable because they "accurately quoted the Indiana Supreme Court's decision in *Brown v. Branch*, 758 N.E.2d 48, 52 (Ind.2001) for the five elements that Indiana uses to evaluate claims of promissory estoppel." Response to Order to Show Cause, pg.8. As for their failure to mention *Security Bank & Trust* and the distinction between promises and non-binding statements of intent, they claim (without authority) that "the split decision of an intermediate court is not binding almost thirty years later on federal application of state law." Response to Order to Show Cause, pg. 8.

To begin with, counsel never argued that bankruptcy trustees should be subject to the doctrine of promissory estoppel in how they go about administering the estate. They simply assumed the doctrine applied, in spite of their inability to locate any authority on the issue one way or the other. *See, Thornton*, 787 F.2d at 1153 ("counsel ... may not make assertions of law for which there is there is no support."). Since the court deals with the arguments counsel actually made, not arguments that might have been advanced, *Beverly Gravel, Inc.*, 908 F.2d at 225; *Ronco*, 838 F.2d at 218, it does not need to address whether a reasonable argument could have been made that trustees should be subject to the doctrine; it need only consider whether counsels' assumption and the arguments that stemmed from it were reasonable.

When counsel was unable to locate any authority applying the doctrine of promissory estoppel to the manner in which trustees administer bankruptcy estates, that should have been a signal for caution; not

a license to proceed. *See, Berwick Grain Co. v. Illinois Department of Agriculture*, 217 F.3d 502, 505 (7th Cir.2000) ("The very point of Rule 11 is to lend incentive to litigants to stop, think and investigate more carefully before serving and filing papers, ... but when his quest proved futile [counsel] disregarded the rule. Having done so, he has no basis to complain about the district court's decision to sanction him."). It was not acceptable to assume and assert that the doctrine applied and hope that it would turn out to be true. *Thornton*, 787 F.2d at 1154. *See also, Frantz*, 836 F.2d at 1064 ("A party may not strike out blindly and rely on its opponent to do the research to make the case or expose its fallacies."); *Slater*, 187 F.R.D. at 217. Furthermore, just because Indiana recognizes the doctrine of promissory estoppel in ordinary affairs is no basis for assuming that bankruptcy trustees, who are subject to judicial oversight in the administration of estates, are as well. That is especially so when one has been unable to locate any authority supporting the proposition. As the Eleventh Circuit noted in *DeSisto*:

Jurisdiction A might recognize the tort of 'XYZ' which Jurisdiction B does not. A lawyer in B could not in good faith submit a complaint based on an XYZ cause of action asserting that XYZ is the existing law merely because XYZ is a legitimate cause of action in A. Instead, the lawyer would be required to inform the court that she recognized that XYZ was not yet a cognizable action in B but that she believed that the law of B should be extended, modified, or reversed to incorporate the tort of XYZ. Only then would the lawyer have satis-

---

**3.** Throughout their brief counsel often assert that they conducted reasonable research or researched an issue with reasonable diligence without ever telling the court what that re-search was or what it produced. Without that underlying information it is impossible to conclude that what counsel did was either reasonable or diligent.

fied her obligations under Rule 11. *De-Sisto,* 888 F.2d at 766.

One need only substitute Indiana for "jurisdiction A," bankruptcy proceedings for "jurisdiction B," and promissory estoppel for "XYZ" and you have an accurate description of this case and how counsel should have proceeded.

◼ In addition to claiming that their pre-filing investigation was reasonable, counsel contend they satisfied their obligations under the rule because they accurately quoted the elements of promissory estoppel from the one case they cited, *Brown v. Branch,* 758 N.E.2d 48. They also defend their argument that the trustee's statement that he would be filing a motion to abandon constituted a promise and not an unenforceable statement of intent by trying to distinguishing the facts here from those in the case cited in the court's decision, *Security Bank & Trust Co. v. Bogard,* 494 N.E.2d 965. Finally, they argue that *Security Bank* is not binding because of its age and because it was a split decision from the court of appeals.

As for the latter argument, the court was not aware that appellate decisions had an expiration date or that decisions by divided panels were not authoritative. That proposition will come as a surprise to both the Seventh Circuit and the district courts in this state, all which have cited *Security Bank & Trust* for the proposition that a statement of intent is not a promise. *See, Garwood Packaging, Inc. v. Allen & Co., Inc.,* 378 F.3d 698, 702 (7th Cir.2004); *Wood v. Mid–Valley, Inc.,* 942 F.2d 425, 428 (7th Cir.1991); *Tyler v. Trustees of Purdue University,* 834 F.Supp.2d 830, 848 (N.D.Ind.2011); *Schulz v. American Standard Insurance Company,* 2002 WL 655693, *5 (S.D.Ind.2002).

As for the other arguments, the court will acknowledge that counsel accurately quoted *Brown v. Branch* for the elements of promissory estoppel. But that is not the problem here. The problem was the failure to do anything more than the most minimal amount of research needed to find a case that recited the elements of the doctrine and then quit, without giving any further thought, research or attention to the matter. As a result, counsel failed to learn that there is a meaningful distinction between a promise, which the doctrine may enforce, and an expression of intent, which it will not. Moreover, Indiana is not unique in that regard. The distinction is part and parcel of the doctrine. *See e.g.,* Restatement (Second) of Contracts § 2; *Iuteri v. Family Care Plus,* 2010 WL 2822097 (Conn.Super.2010) (quoting Law of Contracts, Calamari & Perrillo, § 6. 1, pp. 249–50); *Stewart v. Cendant Mobility Services Corp.,* 267 Conn. 96, 837 A.2d 736, 742–43 (2003) (citing 3 A. Corbin, Contracts (Rev. Ed. 1996) § 8.9, pp. 29–30). Such a minimal pre-filing investigation in connection with the research and preparation of a post-trial brief is inadequate.[4] The belated attempt to distinguish *Security Bank & Trust* in response to the court's sanctions inquiry does not count. Counsel never recognized the distinction between promises and expressions of intent, or tried confront the issue in their the original brief. Had they done so, things might have been different. Nonetheless, since counsel never tried to make such an argument in the first place, they cannot avoid sanctions by an after the fact assertion that a reasonable argument might have been made. *Ronco,* 838 F.2d at 218; *Beverly Gravel,* 908 F.2d at 225.

The court's third concern involved the objectors' mischaracterizing the Supreme

---

4. The only other explanation is that counsel's research discovered the distinction and counsel chose to ignore it. That too would be sanctionable.

Court's decision in *Schwab v. Reilly*, —— U.S. ——, 130 S.Ct. 2652, 177 L.Ed.2d 234 (2010), regarding the effect of the debtor's claimed exemption and ignoring the holding in that decision. Debtor had claimed an exemption of $0.00 in the contaminated real estate, to which there was no objection. Schedule C—Property Claimed as Exempt, filed March 4, 2011. In response to the motion to compromise they argued that the lack of objection to the claimed exemption operated to exclude the entire property from the bankruptcy estate. The objectors contended that *Schwab* involved federal bankruptcy exemptions and "holds that, by listing the equipment as exempt, the debtor retained only a financial 'interest' in the equipment, 'not the equipment per se.'" Brief at pg.16. They then argued that because of distinctions in the wording of Indiana's exemption statute under which the debtor's exemption was claimed, *Schwab* was inapplicable. Their response to the order to show cause continues that same theme claiming they did not ignore the Court's holding, but instead "distinguished the basis for the dissent from the majority opinion; identified differences in statutory language between the federal exemptions in *Schwab* and the Indiana exemptions that apply here; and reasonably argued that Indiana's statutory scheme more closely follows the approach of the *Schwab* dissent." Brief at pg. 9.

Although the debtor in *Schwab* had claimed federal bankruptcy exemptions (11 U.S.C. § 522(d)(5), (6)) for the property in question, that decision was *not* about the meaning of those exemptions. It was, instead, about how the debtor lists its claimed exemptions on Schedule C and when the trustee was required to object to the information placed on that schedule. The issue was whether the debtor could say one thing about the value of a claimed exemption on Schedule C and then argue that its claim had actually exempted a

much greater value than what had been stated. The case was about and "governed by § 522(d)(1)." *Schwab v. Reilly*, 130 S.Ct. at 2660. The Court's ruling was quite clear:

> Where, as here, a debtor accurately describes an asset subject to an exempt interest and on Schedule C describes the 'value of the claimed exemption' as a dollar amount within the range the Code allows, interested parties are entitled to rely upon that value as evidence of the claim's validity. Accordingly, *we hold* that Schwab was not required to object to Reilly's claimed exemptions in her business equipment in order to preserve the estate's right to retain any value in the equipment beyond the value of the exempt interest. *Schwab*, 130 S.Ct. at 2669 (emphasis added).

The Court's holding could not be more explicit and there is nothing about it that justifies the argument that a claimed exemption of $0.00 actually exempts everything.

■■■ Neither courts nor litigants are free to ignore the holdings of the Supreme Court. *U.S. v. Leahy*, 438 F.3d 328, 332 (3rd Cir.2006). Yet, that is exactly what counsel did. Admittedly, they referred to *Schwab* but then, rather than acknowledging its force, they distorted it beyond recognition. They never once acknowledged the Court's holding, even though the decision used the words "we hold ..." which should have dispelled any doubt over its meaning, and that holding was directly contrary to the arguments they advanced. "[W]hen counsel engages in this type of deliberate mischaracterization of precedent, sanctions are warranted." *Teamsters Local No. 579 v. B & M Transit, Inc.*, 882 F.2d 274, 280 (7th Cir.1989). *See also, Multi–Media Distributing Co. Inc. v. United States*, 836 F.Supp. 606, 614 n. 7 (N.D.Ind.1998) ("any inquiry at all

would have revealed that [counsel's] citation to *In re Grand Jury Subpoena* treated black as white. Misrepresentation of citation is clearly grounds for Rule 11 sanctions.").

*Schwab* is not the only decision counsel mischaracterized. They also misrepresented the Seventh Circuit's decision in *Hoseman v. Weinschneider*, 322 F.3d 468 (7th Cir.2003), by quoting it out of context. In connection with their argument that the trustee was required to abandon the contaminated property, they argued that the trustee's letter indicating he would be filing a motion to abandon constituted a waiver of the right to administer the asset. Brief at pp. 22–23. In doing so they quoted *Hoseman*, for the proposition that " '[B]ankruptcy trustees regularly make use of releases and waivers,' which are binding even though they 'do not always amount to 'abandonment' of estate property.' *Hoseman v. Weinschneider*, 322 F.3d 468, 475 (7th Cir.2003)." *Id.* Yet, unlike the case before this court, *Hoseman* was not addressing the question of whether the trustee had equitably waived the opportunity to administer an asset by making a brief statement in a short letter that passed between the parties. It was, instead, dealing with a formal, contractual release and covenant not to sue that had been executed by the trustee in connection with a settlement that had been approved by the bankruptcy court following notice to all creditors. *Id.* at 474–75.

In response to the order to show cause counsel state that they accurately quoted *Hoseman*, their use of this quote "was reasonably intended to anticipate arguments that a formal motion in the bankruptcy court is the *only* possible procedure by which a trustee may abandon property" and so "[i]t was reasonable ... to cite *Hoseman* for the simple proposition that releases and waivers may sometimes (even

'regularly') take the place of a motion for abandonment." Response to Order to Show Cause at 10–11.

The court acknowledges that the sentence from *Hoseman* was accurately quoted. But misquotation is not the problem. The problem is that counsel ignored the context in which that statement was made and by doing so made the decision appear to stand for a proposition that was the complete opposite of the point the circuit court was emphasizing. *Hoseman* was not concerned with how a trustee administers an estate's assets. It clearly recognized that the trustee had broad discretion in deciding how best to do so. *Hoseman*, 322 F.3d at 475. What mattered to *Hoseman* was not the vehicle the trustee had chosen but whether the interests of creditors had been protected in connection with enforcing that choice. A fuller recitation of *Hoseman*, placing the sentence counsel quoted in its proper context, should make the point.

> Because the release and covenant not to sue executed by the Trustee were part of a compromise settlement entered into by the trustee with bankruptcy court approval under Rule 9019 of the Bankruptcy Code, compliance with the formal abandonment procedures was not necessary in this situation. In addition, bankruptcy trustees regularly make use of releases and waivers in administering bankruptcy estates, and such decisions do not always amount to 'abandonment' of estate property. Rather, the giving of a release in exchange for some action by the debtor (in this case, the turning over of one million dollars worth of property), as part of a generally beneficial compromise settlement, may be the most efficient and fair means of administering the estate. In any event, compliance with the Bankruptcy Code's abandonment provisions is meant to ensure

the fair treatment of creditors, *see, Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 618 (7th Cir.2002), and we believe those interests have been adequately protected here.

\* \* \* \*

In addition, the compromise settlement between the trustee and [the debtor] was submitted to and approved by the bankruptcy court, after proper notice to [the debtor's] creditors and opportunity for a hearing on any objections.... Given this notice and opportunity to be heard, we cannot say that creditors were deprived of any protections afforded by the Bankruptcy Code. *Hoseman*, 322 F.3d at 474–75.

The court in *Hoseman* was, quite clearly, enforcing actions taken by a trustee that had formally been approved by the bankruptcy court after notice to all creditors, which completely satisfied all the requirements of the Bankruptcy Code and Rules of Procedure designed for their protection. Counsel ignored that predicate when they relied upon that decision in arguing that the trustee was bound to a particular course of action where none of those requirements had been met: creditors were never given any notice, nothing had been approved by the court or even submitted to it for any type of approval.

▆ The deliberate mischaracterization of precedent is sanctionable. *Teamsters Local No. 579*, 882 F.2d at 280; *Multi–Media Distributing*, 836 F.Supp. at 614 n. 7. Words must be read in context; not in isolation, divorced from the context in which they appear. It is the context in which statements are made that gives them their accurate meaning. A particular statement can be misrepresented just as completely by quoting it out of context, even though the quoted statement is accurately reproduced, as by lying about what was said. That is what counsel did here. They accurately quoted a single sentence from an appellate decision, but took it so completely out of the context in which it was made as to make black seem white. That is not only inexcusable, it is sanctionable. *See, Multi–Media Distributing*, 836 F.Supp. at 613–14 n. 7.

▆ Once the court has found a violation of Rule 11, whether or not it imposes sanctions, together with the nature of any sanction, is a matter committed to its discretion. Fed. R. Bankr.P. Rule 9011(c) ("the court may ... impose an appropriate sanction"). In fashioning an appropriate sanction, the primary goal should be deterrence; in other words, to avoid a repetition of the misconduct by the sanctioned party and others similarly situated. Fed. R. Bankr.P. Rule 9011(c)(2). *See also, White v. General Motors Corp. Inc.*, 908 F.2d 675, 685 (10th Cir.1990), *cert. denied*, 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991); *In re Rimsat, Ltd.*, 229 B.R. 914, 921 (Bankr.N.D.Ind. 1998), *aff'd*, 230 B.R. 362 (N.D.Ind.1999), aff'd., 212 F.3d 1039 (7th Cir.2000). Monetary sanctions are one way of doing so, but they are not the only way. In some situations, an admonition may suffice, while in others something much more severe will be called for.[5] In fashioning an appropriate sanction, the court may consider such

---

**5.** Many times an appropriate sanction will involve requiring the sanctioned party to reimburse its opposition for the additional costs, expenses and fees incurred because of the sanctionable conduct. As much as the court might like to do so, so that the estate is reimbursed for the extra costs that have been imposed upon it, that option is not available here because the court, not the trustee, initiated the sanctions inquiry. *See*, Fed. R. Bankr.P. Rule 9011(c)(2) ("if imposed on motion ... an order directing payment of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.").

things as the nature of the misconduct, whether it was intentional or inadvertent, the degree of culpability, if it represents a pattern of activity in this or other litigation, its effect on the litigation, and, if appropriate, the resources of the individual or party being sanctioned. *See,* Fed. R.Civ.P. Rule 11, Advisory Committee Notes, 1993 Amendments. Nonetheless, deterrence is the goal.

■ Thus far the court has been discussing counsel collectively because both Mr. Shere and Mr. Orr signed the brief in question and, as such, they are both responsible for the sanctionable arguments it contained. Fed. R. Bankr.P. Rule 9011(b) ("By presenting to the court (whether by signing, filing, submitting or later advocating)" an attorney certifies … ). Although both attorneys are responsible for the violations of the rule, that does not mean they both are equally culpable. Mr. Shere was the author of the brief; Mr. Orr simply signed on to what Shere had produced. While that does not insulate him from sanctions, *see, Webb v. Board of Trustees of Ball State University,* 2001 WL 548314, *15 (S.D.Ind.2001); *Long v. Quantex Resources, Inc.,* 108 F.R.D. 416 (S.D.N.Y. 1985) (local counsel who sign or file sanctionable documents may be sanctioned even though they did not author them), in fashioning an appropriate sanction the court can take their differing roles into consideration and so will address them separately.

■ Mr. Shere authored a brief that contained at least four separate violations of Rule 11 in the arguments it advanced. They were also egregious violations. A law student who produced such a brief

would fail legal research and writing, and perhaps ethics. Moreover, the violations were intentional. They were not the product of negligence or hurried preparation. You cannot produce a brief that never refers to the governing legal standard without trying; you cannot ignore the precise holding of a Supreme Court decision—especially when it is prefaced with the words "we hold …"—without knowing what you are doing; you cannot locate a sentence in the midst of a much longer paragraph without recognizing the context in which it appears; and you cannot advance an argument without providing any authority to support it, because your legal research produced none, and· not realize what you are doing. The violations become even more significant because on at least two occasions the court reminded counsel of the legal standard that governed the dispute, Transcript filed Nov. 7, 2011, pp. 14–15, 21–22; Trial Transcript filed Feb. 10, 2012, pp. 65, 71–72, as well as the correct holding in *Schwab.*[6] Transcript filed Nov. 7, 2011, p.10. Moreover, to find so many significant violations in a single submission reflects something fundamentally wrong with Mr. Shere's approach to researching and preparing legal briefs. They are not casual oversights but symptoms of a more organic problem; a problem that must be corrected. Finally, counsel's frivolous arguments dramatically increased the time the court was required to devote to this matter, to the detriment of the other cases on its docket.

In light of the nature of Mr. Shere's violations of Rule 9011 and the circumstances under which they occurred, the court believes that severe sanctions are

---

**6.** This information from the court did not prevent Mr. Shere from advancing the arguments he did, but it did require him to be more cautious in doing so, to better research those arguments, and to give them greater thought before continuing with them. Rule 11 is not a response to unsuccessful arguments, only inadequately investigated and frivolous ones, *Mars Steel,* 880 F.2d at 932, and that was the vice here.

called for in order to effectively deter both him and others from engaging in similar conduct in the future. *See, BondPro Corp. v. Siemens Power Generation, Inc.,* 466 F.3d 562, 563 (7th Cir.2006) ("The time has come to impose an exemplary public sanction in the hope of deterring further violations"); *Kapco Manufacturing Co., Inc. v. C & O Enterprises, Inc.,* 886 F.2d 1485, 1496 (7th Cir.1989) ("A sanction without teeth may lack sufficient bite"). *See also, Janky v. Batistatos,* 259 F.R.D. 373, 383 (N.D.Ind.2009). As a result, he shall pay the clerk of this court the sum of $1,000 for each of the four violations of the rule, for a total sanction of $4,000. While the court recognizes that Rule 11 requires the least severe sanction adequate to serve as an effective deterrent, *Vollmer v. Publishers Clearing House,* 248 F.3d 698, 710–11 (7th Cir.2001), it is convinced lesser sanctions, such as those counsel suggested in the response to the court's inquiry ($740 or being allowed to voluntarily withdraw), would be nothing more than an ineffective slap on the wrist, would not adequately express the extent of the court's disapproval for counsel's actions, and would not serve as an effective deterrent against similar misconduct.

As for Mr. Orr, he is in a somewhat different situation. His involvement in the sanctions inquiry appears to arise more out of misplaced trust than a conscious disregard of his obligations under Rule 9011. He naively trusted Mr. Shere, someone he apparently regarded as more experienced and more capable, to research and prepare an appropriate brief and then signed on to the resulting product without further thought. As a result of this inquiry, he now knows that he should not and cannot do so, and we trust that will be sufficient to prevent both him and others from mindlessly subscribing to the work another produces. *See, Multi–Media Dis-*

*tributing,* 836 F.Supp. at 614 n. 7. ("The court's public condemnation serves as its sanction in this case."); *Slater,* 187 F.R.D. at 220.

An appropriate order will be entered.